## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA f/u/b/o POWERMAX INC. <br><br> And <br><br> POWERMAX INC. <br><br>           **Plaintiffs,** <br><br>     **v.** <br><br> COAKLEY & WILLIAMS CONSTRUCTION, INC., a/k/a COAKLEY WILLIAMS CONSTRUCTION, INC. <br><br> and <br><br> THE CONTINENTAL INSURANCE COMPANY <br><br>           **Defendants.** | **Case No. 1:07-cv-01737** <br> **Judge Lamberth** |

### FIRST AMENDED COMPLAINT

Use-Plaintiff United States of America f/u/b/o PowerMax Inc., and PowerMax Inc. (collectively "PowerMax") hereby bring this First Amended Complaint against Coakley & Williams Construction, Inc. a/k/a Coakley Williams Construction, Inc. ("Coakley") and The Continental Insurance Company ("Continental") as Co-defendants, and state in support hereof as follows:

### I.  THE PARTIES

1.     Use-Plaintiff and Plaintiff PowerMax is a specialty subcontractor authorized to transact business in the District of Columbia with its principal office located at 8510 Cedar Street, Silver Spring, MD 20910.

2.      Defendant Coakley is a general construction contractor which was organized and existing under the laws of the State of Maryland and which, upon information and belief, is authorized to transact business in the District of Columbia.

3.      Defendant Continental, upon information and belief, is a corporation duly authorized to engage in the business of executing surety bonds in the District of Columbia with its principal office located in Ellicott City, MD.

## II.  JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to the Miller Act, 40 U.S.C. §§ 3131(a) *et seq.*

5.      Pursuant to the Miller Act, 40 U.S.C. § 3131(b), venue is proper in this Court since the project in question is located at 1001 Monroe Street N.E., Washington, D.C. and the Prime Contract was performed in Washington, D.C. (the "Project").

## III.  FACTS

6.      Coakley, the prime contractor on the Project, entered into Contract No. W912DR-04-C-0010 (the "Prime Contract") with the United States Army Corps of Engineers to perform certain work known as the Luke C. Moore High School in Washington, D.C.

7.      Pursuant to the Prime Contract's terms, Coakley as principal and Continental as surety executed and delivered to the United States a Payment Bond (the "Bond" attached as Exhibit 1 hereto), conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided for in the Prime Contract, including Plaintiff.

8.      On June 11, 2004 PowerMax entered into a subcontract ("Subcontract") Exhibit 2 hereto, with Coakley whereby PowerMax agreed to perform, among other things, certain mechanical work required of Coakley under its Prime Contract with the United States.  During

the course of Subcontract performance, PowerMax was directed to perform extensive additional work including, without limitation, modifications to both plumbing and HVAC systems.

9.     PowerMax performed all work requested of it by Coakley in a workmanlike and timely fashion and is entitled to be paid in full for the work it performed.

10.     PowerMax was also extended, delayed and disrupted in the performance of its work due to, among other things, compensable delays and changes in the work caused by the Owner and/or Coakley, resulting in extended performance costs and loss of productivity for PowerMax and various of its subcontractors.

11.     As a result of the above-described delays and disruptions, PowerMax incurred extended performance costs in the form of, among other things, and without limitation, extended general conditions. More particularly, these extended general conditions arose from PowerMax's having to maintain its field supervision, project management and field equipment, material and supplies for an extended period of at least 18 months. PowerMax is entitled to payment in the amount of $900,834.72 for the above described delays and disruptions (see paragraphs 10 and 11).

12.     In addition, PowerMax has also performed change order work and extra work orders for which it has submitted proposals to Coakley totaling $360,880.71.

13.     Additionally, the contract amount plus acknowledged change orders total $2,777,049.71, consisting of the original contract amount of $2,650,000.00 plus acknowledged change orders of $127,049.71.

14.     Accordingly, the total adjusted contract amount is $2,777,049.71 plus $1,261,715.43 (see, paragraphs 11 and 12, above), or $4,038,765.14.

15.     To date, PowerMax has received payments totaling $2,700,000.00. Therefore, the sum of $1,338,765.14 remains unpaid.

16.     PowerMax has performed work for which it remains unpaid, without legal justification or excuse, in the amount of $1,338,765.14. This amount has been due and owing for more than ninety (90) days but less than one (1) year from the initial filing in this matter.

17.     Coakley and Continental have failed and refused to make payment to PowerMax. Coakley's failure to make payment is a material breach of the Subcontract between Coakley and PowerMax. Continental's and Coakley's failure to make payment under the Bond is a material breach of their Bond obligation.

## IV.  CAUSES OF ACTION

### COUNT I
### (Miller Act Bond Claim)

18.     The preceding paragraphs 1-17 are incorporated as if fully set forth herein.

19.     From the date of filing this complaint, a period of more than ninety (90) days but less than one (1) year from the day on which the last labor was performed or materials supplied to the Project by PowerMax has elapsed on the amount claimed of $1,338,765.14. PowerMax has not been paid for the aforesaid labor or materials.

20.     PowerMax is a person entitled to the protection of the Miller Act, 40 U.S.C. §§ 3131(a) *et seq.* and is also a person protected by the Bond furnished by Continental and Coakley.

21.     PowerMax is a claimant under the Bond; its claim, set forth herein, is recoverable under the Bond and the Miller Act; and all conditions precedent for its recovery hereunder have either been performed, have been satisfied, or have been waived.

22.     By reason of the foregoing, Continental and Coakley are justly indebted to PowerMax under the Bond in the sum of $1,338,765.14.

WHEREFORE, Use-Plaintiff United States of America f/u/b/o PowerMax Inc. and Plaintiff PowerMax, Inc. demand judgment against The Continental Insurance Company and

Coakley & Williams Construction, Inc. a/k/a Coakley Williams Construction, Inc., jointly and severally, in the amount of at least $1,338,765.14, plus interest, costs and such other and further relief as this Court deems just and proper.

**COUNT II**
**(Breach of Contract Claim)**

23.     The preceding paragraphs 1-17 are incorporated as if fully set forth herein.

24.     Coakley is indebted to PowerMax in the sum of $1,338,765.14.

25.     Coakley's failure to make payment as due is a material breach of the subcontract between PowerMax and Coakley.

WHEREFORE, Plaintiff PowerMax Inc. demands judgment against Defendant Coakley & Williams Construction, Inc. a/k/a Coakley Williams Construction, Inc. in the amount of at least $1,338,765.14 plus interest, costs and such other and further relief as this Court deems just and proper.

Date:  October 3, 2007                    Respectfully submitted,

                                          BELL, BOYD & LLOYD LLP

                                          By: _____
                                              Brian Cohen (D.C. Bar 448137)
                                              Lawrence M. Prosen (D.C. Bar 457703)
                                              1615 L Street, N.W., Suite 1200
                                              Washington, DC 20036-5610
                                              Telephone: (202) 955-6836
                                              Facsimile: (202) 835-4117

                                              Attorney for Plaintiff United States f/u/b/o
                                              PowerMax Inc.

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES this 3rd day of October, 2007, that a copy of the foregoing First Amended Complaint will be served along with the service package (Summons and Complaint) in this matter by hand delivery through its process server.

Lawrence M. Prosén

| PAYMENT BOND<br>(See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>February 17, 2004 | OMB No.:9000-0045 |
|---|---|---|

Bond No. 929319508

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

**PRINCIPAL** (Legal name and business address)

Coakley & Williams Construction, Inc.
16 South Summit Avenue, Suite 300
Gaithersburg, MD  20877

**TYPE OF ORGANIZATION** ("X" one)

- [ ] INDIVIDUAL
- [ ] PARTNERSHIP
- [ ] JOINT VENTURE
- [x] CORPORATION

STATE OF INCORPORATION
MD

**SURETY(IES)** (Name(s) and business address(es))

The Continental Insurance Company
6021 University Boulevard, Suite 500
Ellicott City, MD  21043

| PENAL SUM OF BOND | | | |
|---|---|---|---|
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| 11 | 613 | 500 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 2/10/2004 | W912DR-04-C-0010 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

Coakley & Williams Construction, Inc.

| SIGNATURE(S) | 1. By: (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
|---|---|---|---|---|
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
|---|---|---|
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

The Continental Insurance Company

| | NAME & ADDRESS | 6021 University Boulevard, Suite 500<br>Ellicott City, MD  21043 | STATE OF INC.<br>NH | LIABILITY LIMIT<br>$ | Corporate Seal |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | 1. By: | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. John C. Plate<br>Attorney-In-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

Complaint Exhibit
1

## CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space

designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A (REV.10-83) BACK

# Subcontract Agreement
## Coakley Williams Construction, Inc.
## 16 S. Summit Avenue, Suite 300
## Gaithersburg, Maryland 20877

15500

**THIS SUBCONTRACT,** made this 11th day of June, 2004, by and between Coakley Williams Construction, Inc. (hereinafter "Contractor") and Power Max Inc. (hereinafter "Subcontractor") located at 8510 Cedar St., Silver Spring, MD. 20910. **WHEREAS,** Contractor and the United State Government (hereinafter "Owner") have entered into a contract for the construction of the Luke C. Moore SHS – Washington, DC (hereinafter "Project"), according to the Contract Documents listed in Exhibit A attached hereto (hereinafter "Contract Documents"). The documents set forth in Exhibit A are not necessarily attached to this agreement, these are as fully a part of the subcontract as if attached and **WHEREAS,** Contractor desires to subcontract certain work specified in the Contract Documents, and subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

1.  Subcontractors Work

    a.      Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B (hereinafter "Scope of Work") and work incidental thereto, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner.

    b.      The Subcontractor warrants that no portion of the Work, which is essential to support his Work and/or is normally Work of his trade, has knowingly been excluded to render an incomplete job or to induce extra compensation; to that end, all Work normally associated with the Scope of Work and not specifically excluded shall be the Subcontractor's Work.

    c.      In respect of work covered by this Subcontract, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards Owner in the Contract Documents. Subcontractor shall have the right to enforce its rights and to defend against claims against it by the Owner as provided in Article 9.

2.  Payment

    a.      Contractor shall pay Subcontractor for performance of the work subject to additions and deductions by change order, the total sum of

    b.      Partial payments shall be due Subcontractor in the amount of ninety percent (90%) of the work in place, and for which payment has been made to Contractor by Owner. If the Contract Documents allow Contractor partial payments for stored materials, partial payments shall also be due Subcontractor in the amount of ninety percent (90%) of stored materials for which payment has been made to Contractor by Owner. Subcontractor shall submit a breakdown of the total Subcontract price. In the event Contractor disapproves said breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments.

    c.      Partial payments shall be due on or about the tenth day following receipt of payment from Owner by Contractor. No partial payment made under this Subcontract shall be considered an acceptance of the work in whole or in part. All material and work covered by partial payment shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all work and materials upon which payments have been made until final acceptance thereof by Owner.

    d.      Subcontractor shall insure that all sub-subcontractors, employees and suppliers, at all times, are paid all amounts due in connection with the performance of this Subcontract. After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Contractor that all previous amounts owed in connection with performance of this Subcontract have been paid. Subcontractor shall also immediately reimburse Contractor for any amounts paid by Contractor or under Contractor's payment bond in connection with this Subcontract caused by failure by Subcontractor to make payment as provided in this Article. Contractor may withhold amounts otherwise due under this Subcontract for any other contractual arrangement between the parties to cover any costs or liability Contractor has incurred or may incur for which Subcontractor may be responsible hereunder.

    e.      Subcontractor expressly agrees that payment by the Owner to the Contractor for any work performed by the Subcontractor is a condition precedent to any payment by the Contractor to the Subcontractor and that the Contractor is under no obligation to make partial and final payments to the Subcontractor as provided in this Article 2 until and unless the Contractor has been paid by the Owner.

    f.      Final payment shall be made after Subcontractor's work has been accepted by Owner, satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, the Subcontractor's work is complete, and Contractor has been paid in full for the Subcontractor's work.

    g.      Retainage shall be reduced to the Subcontractor, to the same extent Owner reduces retainage to the Contractor, provided Subcontractor is fulfilling his contractual obligations.

Initials

06/02/04

Complaint Exhibit
2

3.    Subcontractor's Investigations and Representations
      a.    Subcontractor represents that it is fully qualified to perform this Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained (i) the work required by this Subcontract, (ii) the conditions involved in performing the work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Contractor or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to independently investigate and become fully informed will not relieve Subcontractor from its responsibilities hereunder.
      b.    The Subcontractor shall be familiar with all applicable codes, ordinances and standard practices of his trade; to wit, the Subcontractor shall be the recognized expert of his trade. Therefore, the Subcontractor shall make no claim for extra compensation due to any undiscovered discrepancies within the Contract Documents. nor shall the Contractor be made to suffer any penalties due to the subcontractor's failure to comply with any state, county or local ordinance or standard practices or procedures relating to his work.
      c.    Regardless of any language to the contrary in the contract drawings, contract specifications, or notations on the shop drawings and/or submittals (including architect's stamps), this Subcontractor shall be solely responsible for the dimensional integrity for the work of his trade and shall advise the General Contractor should he need to coordinate and dimensions with the work of other trades. He shall also advise the General contractor in writing of any dimensional discrepancies in the Contract Document that will affect his work. The General Contractor will assume no responsibility for the Subcontractor's failure to comply with the above requirements. This paragraph shall take precedence over any contrary reference in any of the Contract Documents.
4.    Subcontractor's Liability
      a.    Subcontractor hereby assumes the entire responsibility and liability for all work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of the work by Owner. In the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost.
      b.    Subcontractor shall be liable to Contractor for all costs Contractor incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its suppliers and/or subcontractors of any tier to perform. Subcontractor's liability shall include, but not be limited to (1) damages and other delay costs payable by Contractor to Owner; (2) Contractor's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties; and (5) attorney's fees and related costs.
      c.    If any person (including employees of Subcontractor) suffers injury or death or any property is damaged, lost or destroyed as a result, in whole or in part, of negligence (or other act for which there is legal liability) of Subcontractor, its employees, agents or lower-tier Subcontractors, then the Subcontractor shall assume the liability therefor, and shall (at Contractor's option) defend any action, pay all costs including attorney's fees and satisfy any judgments entered against Contractor, and further agrees to hold Contractor and its agents, servants, employees and sureties harmless therefor. The Subcontractor's obligations under this Article 4.c shall be in addition to any indemnity liability imposed by the Contract Documents.
      d.    In the event that Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of Contractor, Subcontractor shall be liable to Contractor for any loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be due solely to the gross negligence of Contractor's employees operating Contractor-owned or leased equipment.
      e.    Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 5, or otherwise.
5.    Subcontractor's Insurance
      a.    Prior to commencing the work, Subcontractor shall procure, with Contractor and Owner as additional insured parties, and thereafter maintain, at its own expense, until final acceptance of the work, insurance coverage in a form and from insurers acceptable to Contractor of not less than the following:
           1. To the fullest extent permitted by law, the Subcontractor will hold harmless, defend and indemnify the Contractor and Owner, and the employees, representatives, officers and directors of any of them form and against claims, damages, losses and expenses, including but not limited to attorneys' fees, for bodily injury, sickness, disease or death or to injury to property of any sort, including loss of use resulting therefrom, or contractual liabilities of any sort, arising out of or resulting from performance of the Work by the Subcontractor or anyone for whom Subcontractor may be responsible, caused in whole or in part out of their alleged negligence, regardless of whether such loss is caused in part by an indemnified party hereunder.
           2. Subcontractor shall at all times maintain the following minimum insurance coverages (unless greater amounts are required by the Contract Documents), all on an "occurrence" basis, without deductibles, with admitted carriers acceptable to the Contractor, with minimum A.M Best ratings of at least A-VII, and licensed to do business where the Work is located. It is agreed that Subcontractor waives subrogation under all policies and shall cause their Workers Compensation policy to be endorsed to reflect this, with a copy to Contractor. All policies except Workers Compensation shall be endorsed to name Contractor and Owner, and the employees of all of them as additional insureds (form CG20 10, Form B, 11/85 edition unmodified, or its equivalent) to include ongoing and completed operations, on a primary and non-contributory basis. All policies of Subcontractor shall be endorsed to give at least 30 days prior written notice to the Contractor in the event of cancellation, non-renewal or material reduction in coverage. The limits stipulated herein are minimums only and

Initials _____
06/02/04

in no way serve to limit or restrict the liability of Subcontractor under this agreement. These limits may be achieved through one or more policies of insurance, including Umbrella or Excess Liability policies.

| General Liability: | Each Occurrence | $1,000,000 |
| | Personal & Advertising Injury | $1,000,000 |
| | General Aggregate | $2,000,000 |
| | Completed Operations Aggregate | $2,000,000 |
| Auto Liability: | Each Occurrence | $1,000,000 |
| Workers Compensation: | Statutory | |
| Employer's Liability: | Each Accident | $ 100,000 |
| | Each Employee by Disease | $ 100,000 |
| | Aggregate by Disease | $ 500,000 |
| Umbrella/Excess Liability | Each Occurrence/Aggregate | $5,000,000 |

    b.      Property Insurance. Subcontractor shall be responsible to insure the full value of their work and materials, offsite or in transit. Contractor or Owner's "special form" builders risk insurance shall cover materials onsite or installed less any deductible.

    c.      Contractor or Owner has the option to require higher limits of Liability from designated Subcontractors.

    d.      Certificate of Insurance shall be filled with the Contractor prior to commencement of Subcontractor Work.

6.    <u>Time of Performance</u>

    a.      Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Contractor's schedule as reasonably amended from time to time. TIME IS OF THE ESSENCE. Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that the Contract Documents entitle Contractor to reimbursement.

    b.      If requested by Contractor, Subcontractor shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Article 6.a above. Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

    c.      Subcontractor will coordinate its work with the work of Contractor, other subcontractors, and Owner's other builder's, if any, so no delays or interference will occur in the completion of any part or all of the Project.

    d.      Should the Subcontractor's performance of this Subcontract be delayed, impacted or disrupted by any acts of the contractor, other subcontractors, or the Contractor's suppliers, or delayed, impacted or disrupted by any acts or causes which would entitle the Contractor to an extension of time under the Contract Documents, the Subcontractor shall receive an equitable extension of time for the performance of this Subcontract, but shall not be entitled to any increase in the subcontract price or to damages or additional compensation as a consequence of such delays, impacts or disruptions unless the Owner is liable and pays for such delays, impacts or disruptions. The Contractor will pay the Subcontractor the amount allowed and paid by the Owner for the Subcontractor's delay, impact or disruptions. Within five days after the commencement of any delay, impact or disruption caused by the Contractor, other subcontractors, or the Contractor's suppliers, the Subcontractor shall notify the Contractor in writing stating full details of the cause of the alleged delay, impact or disruption. The Subcontractor shall notify the Contractor of any delays, impacts or disruptions for which the Owner is responsible, in sufficient time so that its claim may be timely processed against the Owner administratively.

    e.      Liquidated damages will be assessed the Subcontractor for noncompliance with the attached schedule (EXHIBIT C) for each activity applicable to the work of this Subcontractor including start date, duration, and completion dates for the activity as shown. Upon written notification damages will be assessed in the amount of $1,000.00 for each calendar day beyond the expected start, duration, and completion dates shown. The Subcontractor must notify the Contractor in writing of any unexpected conditions causing delays or noncompliance with schedule. Such written notice does not constitute acceptance of stated delays or conditions. In the event a schedule is not provided at Subcontract execution, the Subcontractor shall be responsible for liquidated damages as identified in Contract Documents to the extent damages are accessed by the Owner for delays caused by the Subcontractor in whole or in part.

7.    <u>Changes</u>

    a.      Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to the sureties, make changes in the work covered by this subcontract. Any unilateral order, or agreement, under this Article 7.a shall be in writing. Subcontractor shall perform the work as changed without delay.

    b.      Subcontractor shall submit in writing any claims for adjustment in the price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner or as a result of deficiencies or discrepancies in the Contract Documents, to Contractor in time to allow Contractor to comply with the applicable provisions of the Contract Documents. Contractor shall process said claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interest of Subcontractor and others including Contractor. Subcontract adjustments shall be made only to the extent that Contractor is entitled to relief from or must grant relief to Owner. Further, each Subcontract adjustment shall be equal only to Subcontractor's allocable share of any adjustment in Contractor's contract with Owner. Subcontractor's allocable share shall be determined by Contractor, after allowance of Contractor's normal overhead, profit and other interest in any recovery by making a reasonable apportionment, if applicable, between Subcontractor, Contractor and other subcontractors or persons with interest in the adjustment. This paragraph will also cover the equitable adjustment or other relief allowed by the Contract Documents.

    c.      For changes ordered by Contractor independent of Owner or Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price.

Initials *[signatures]*
06/02/04

8.  **Subcontractor's Failure to Perform**

a.      If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the work according to the current schedule, (3) cause, by any action or omission, the stoppage, or delay of or interference with the work of Contractor or of any other builder or subcontractor, (4) fail to comply with all provisions of this Subcontract or the Contract Documents, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then, after serving two (2) days written notice, unless the condition specified in such notice shall have been eliminated within such two (2) days, the Contractor may at its option (i) without voiding the other provisions of the subcontract and without notice to the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof, (ii) terminate the Subcontract for default, or (iii) seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to Contractor and/or Owner. In the event of termination for default, Contractor may, at its option, (1) enter on the premises and take possession, for the purpose of completing the work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the project, or (3) complete the work either by itself or through others, by whatever method Contractor may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by Owner. At such time, if the unpaid balance of the price to be paid shall exceed the expense incurred by Contractor, such excess shall be paid by Contractor to Subcontractor. If such amount due Contractor shall exceed such unpaid balance; the Subcontractor shall pay Contractor the difference within five (5) business days following demand by Contractor. Subcontractor shall pay all reasonable costs of collection if any.

b.      If Contractor wrongfully exercises any option under 8.a. (i) (ii) or (iii) above, Contractor shall be liable to Subcontractor for the reasonable value of work performed by Subcontractor prior to Contractor's wrongful action plus the direct costs incurred by Subcontractor as a result of Contractor's wrongful action plus, in the case of a wrongful termination for default, reasonable close-out costs, less prior payments made. The Subcontractor's remedy under this Article 8.b. shall be exclusive. Nothing herein shall bar withholdings by Contractor permitted by other provisions of this Subcontract.

9.  **Settlement of Disputes**

a.      In case of any dispute between Contractor and Subcontractor, due to any action of Owner or involving the Contract Documents, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner, by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to Owner any required communications or documentation. Contractor will, at its option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's work, whenever Contractor is permitted to do so by the terms of the Contract Documents. If such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay or reimburse Contractor for all costs incurred in connection therewith. The Subcontract price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

b.      With respect to any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents, Contractor shall issue a decision, which shall be followed by Subcontractor. If the Subcontractor is correct as to the controversy, Subcontractor shall be entitled to an equitable adjustment in the contact price as its sole remedy. Notification of any such claim for equitable adjustment must be asserted in writing within ten (10) days of Subcontractor's knowledge of the claim.

c.      Any controversy or claim between the Contractor and Subcontractor arising out of or related to this Subcontract or the breach thereof shall be settled by litigation.

10.  **Warranty**

Subcontractor warrants its work hereunder to Contractor on the same terms, and for the same period, as Contractor warrants the work to Owner under the Contract Documents; and with respect to Subcontractor's work, Subcontractor shall perform all warranty obligations and responsibilities assumed by Contractor under the Contract Documents.

11.  **Liens**

a.      In the event that liens are filed by anyone in relation to the labor and/or material being furnished by Subcontractor, Subcontractor agrees to defend, indemnify and hold harmless against any and all costs arising out of or related to a lien filed by a Subcontractor or Supplier to the Subcontractor to include, but not limited to, attorney's fees and court costs and have the same discharged, by posting a bond with the appropriate authorities, or otherwise, within three (3) days of notice. In the event such lien is not so discharged, such circumstances shall be deemed a failure to perform the work on the part of the Subcontractor, subject to the conditions and terms set forth in Article 8 above.

b.      Prior to final payment, Subcontractor shall provide to Contractor a release of its liens and claims and all liens and claims of all persons furnishing labor and/or materials for the performance of this Subcontract, and satisfactory evidence that there are no other liens or claims whatsoever outstanding against the work.

c.      If required by Contractor, Subcontractor shall furnish releases of liens in connection with each request for payment other than the initial request.

Initials _____
06/02/04

12.  Inspection and Acceptance
     Subcontractor shall provide appropriate facilities at all reasonable times for inspection by Contractor or Owner of the work and materials provided under this Subcontract, whether at the Project site or at any place where such work or materials may be in preparation, manufacture, storage, or installation. Subcontractor shall promptly replace or correct any work or materials which Contractor or Owner shall reject as failing to conform to the requirements of this Subcontract. The work shall be accepted according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by Owner or Contractor shall not constitute acceptance of the work.

13.  Termination for Convenience
     Contractor shall have the right to terminate this Subcontract for convenience, by providing Subcontractor with a written notice of termination, to be effective upon receipt by Subcontractor. If the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs, which are due from the Owner for its work, as provided in the Contract Documents, after payment therefor by the Owner to Contractor.

14.  Approvals
     a.  Subcontractor shall deliver to Contractor copies of shop drawings, cuts, samples and material lists required by Contractor or the Contract Documents and in accordance with the Contract Documents within sufficient time so as not to delay performance of the project or within sufficient time for Contractor to submit the same within the time stated in the Contract Documents, whichever is earlier. Any deviation from the Contract Documents shall be clearly identified on shop drawings. Notwithstanding any general approval granted by Contractor or Owner, all work shall be in accordance with the Contract Documents.
     b.  Contractor's review of shop drawings, cuts, samples and material lists is only for the convenience of the Owner in following the work and shall not relieve the Subcontractor from responsibility for any deviations from the requirements of the Contract Documents.
     c.  Subcontractor warrants and agrees that it can and will obtain all requisite approvals from Owner as to its eligibility to serve as a subcontractor and the approvals of all materials and performance of the work as required by the Contract Documents.

15.  Clean-Up
     Subcontractor shall clean up its work and remove all debris resulting from its work in a manner that will not impede either the progress of the Project or of other trades. If the Subcontractor fails to comply with this Article within 24 hours after receipt of notice of noncompliance from the Contractor, the Contractor may perform such necessary clean-up and deduct the cost from any amounts due to the Subcontractor.

16.  Safety Precautions and Procedures
     a.  The Subcontractor shall be solely responsible for the cost of fines, penalties, and judgments leveled or rendered by OSHA and/or other governing agencies resulting out of or caused by the acts or omissions of the Subcontractor, his employees agents or anyone directly or directly or indirectly employed by them.
     b.  The Subcontractor's employees, agents, and Subcontractors shall not use radios, portable tape players, headsets, or any other entertainment devices on this project at any time.
     c.  The Subcontractor shall fully comply immediately with safety directive issued by the Contractor or the Contractor's designated safety inspector. Failure to comply may be deemed a material default under this agreement. The Subcontractor shall be liable for reinspection costs occasioned by his failure to comply with safety regulations.
     d.  If the Subcontractor fails to commence and continue with diligence to correct any safety hazard, the Contractor may do so at the Subcontractor's cost without notice.
     e.  The Subcontractor shall submit all required chemical information lists and material safety data sheets prior to commencing any work under this agreement.
     f.  The Subcontractor shall submit a copy of their safety program prior to commencing any work under this agreement.
     g.  The Subcontractor shall be solely responsible for ensuring that all employees of the Subcontractor, the Subcontractor's suppliers and his vendors comply with all safety requirements contained or referenced in OSHA safety and health standards.

17.  Assignment
     Subcontractor shall not sub-subcontract the work of this Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior written consent of Contractor and Subcontractor's surety. Contractor shall not unreasonably withhold its consent to the assignment of funds due hereunder.

18.  Patents and Royalties
     Except as otherwise provided by the Contract Documents, Subcontractor shall pay all royalties and license fees, which may be due on the inclusion of any patented materials in the work. Subcontractor shall defend all suits or claims for infringement of any patent rights that may be brought against Contractor or Owner arising out of the work, and shall be liable to Contractor and Owner for all loss, including all costs and expenses, on account thereof.

19.  Taxes and Permits
     Except as otherwise provided by the Contract Documents, Subcontractor agrees to pay and comply with and hold Contractor harmless against the payment of all contributions, taxes or premiums which may be payable by it under Federal, state or local laws arising out of the performance of this Subcontract, and all sales, use or other taxes of whatever nature levied or assessed against Owner, Contractor, or Subcontractor arising out of this Subcontract, including any interest or penalties. Subcontractor shall obtain and pay for all permits, licenses, fees and certificates of inspection necessary for the prosecution and completion of its work, and shall arrange for all necessary inspections and approvals by public officials.

Page 5 of 6

Initials [signature]
06/02/04

20.    Laws, Regulations and Ordinances
Subcontractor agrees to be bound by, and, at its own cost, comply with all Federal, state and local laws, codes, ordinances and regulations applicable to this Subcontract and the performance of the work hereunder including the Occupational Safety and Health Act. Subcontractor shall be duly licensed to operated under the law of the applicable jurisdictions. Subcontractor shall be liable to Contractor and Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents resulting from failure to comply including, but not limited to, and fines, penalties or corrective measures.
21.    Labor
       a.    Subcontractor and its lower-tier subcontractors shall not employ anyone in Subcontractor work whose employment may be objected to by Contractor or Owner.
       b.    Should any workers performing work covered by this Subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the work on the part of the Subcontractor subject to the conditions and terms set forth in Article 8 above.

22.    Equal Opportunity
       a.    In connection with the performance of work under this Subcontract, Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, religion, sex, handicap, color or national origin. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer: recruitment or advertising: layoff or termination: rates of pay or other forms of compensation: and selection for training, including apprenticeship. Subcontractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Subcontractor, and approved by the government when required, setting forth the provision of this Article 22.
       b.    Subcontractor shall permit access to its books, records, and accounts by representatives of Contractor or Owner for the purposes of investigation to ascertain compliance with the provisions of this Article 22.
       c.    In the event of Subcontractor's non-compliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.
       d.    Subcontractor shall include the provisions of this Article 22 in every lower-tier subcontract and purchase order. The requirements of this Article 22 shall be in addition to any equal opportunity provisions of the Contract Documents.
23.    Notices
       a.    In the event this Subcontractor does not return all copies of this Subcontract Agreement back to Coakley & Williams Co., Inc. within ten (10) calendar days it shall be deemed the contract has been accepted in its entirely; however, no funds will be disbursed until the signed contracts have been received in this office.
       b.    All notices shall be addressed to the parties at the addresses set out herein, and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.
24.    Severability and Waiver
The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.
25.    Advertising
Neither Subcontractor, its subcontractors, suppliers nor employees shall take photographs of the work on site, or publish or display advertising matter of any description relating to the project without first obtaining the written consent of Contractor and Owner.
26.    Bond
The Subcontractor shall furnish at Subcontractor's expense a Performance and Payment Bond, in the full amount of this Subcontract unless Exhibit B "Scope of Work" specifically excludes this requirement. The bond form and the surety shall be acceptable to the Contractor.
27.    Rider A
Rider A has been added to this document. Rider A addresses agreed to revisions to the Contract language.

28.    Complete Agreement
This Subcontract contains the entire agreement between the parties hereto with respect to the matters covered herein. No other agreements, representations, warranties, or other matters, oral or written, shall be deemed to bind the parties hereto.

**The parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year above written.**

Coakley Williams Construction, Inc.
Contractor

By:_____
      William E. Simons, Senior Vice President

Subcontractor

Timothy E. Murray
President

Page 6 of 6

Initials _____

Luke C Moore SHS
Washington DC
Page 1 of 4

# RIDER A

### 1. <u>Revisions to the Subcontract Agreement</u>

Article 2.e At the end of the paragraph add the following sentence:

> *"Notwithstanding the foregoing, should Contractor not receive payment from Owner for reasons not attributable to this Subcontractor or its work, Subcontractor shall be paid on its invoice, partial or final, no later than 60 days after submission of same to Contractor." This additional provision also applies to Article 2.f.*

Article 3.a Item (ii) Before the word " *conditions* " insert the word *"observable"*.

Article 3.b Delete this provision in its entirety and insert the following in lieu thereof:

> *"Subcontractor shall perform its work in accordance with applicable codes, ordinance sand standard practices of its trade. To the extent the Contract Documents are not in compliance with same, Subcontractor when aware of same, shall bring this noncompliance to Contractor's attention .~~Should compliance with applicable codes, ordinances and standard practices of Subcontractor's trade result in an increased cost of performance, Subcontractor shall be entitled to an equitable adjustment for same.~~*

Article 4.a At lines 3 and 4 delete the words *"shall be liable therefore, and "*. At the end of line 4 after the word *"cost"* delete the period and insert a comma and the words *"Subcontractor's then having right of claim against the party causing such loss, damage or destruction."*

Article 5.a.1

> *At the end of the paragraph change the period to a semi-colon and add "provided, however, that Subcontractor shall have no obligation to hold harmless, defend or indemnify Contractor or Owner if the harm alleged was the result of the sole, gross or willful negligence of a party seeking indemnification hereunder."*

Initials

Luke C Moore SHS
Washington DC
Page 2 of 4

Article 6.a

*At the end of the paragraph, add the following sentence:*
*Notwithstanding the foregoing should Contractor's schedule be amended*
*for reasons not attributable to this Subcontractor ~~or its work~~*
*~~and should such schedule amendments cause an increase in~~*
*~~Subcontractor's cost of performance~~, Subcontractor shall be entitled to*
*an equitable adjustment for same."*



Article 6.d.

(1) Line 6   At end of line change commencement of any *"to read "knowledge of*
*any"*

(2.) At the end of the paragraph add the following sentence:
*"Notwithstanding the foregoing, should Subcontractor be delayed or*
*extended in its performance for reasons attributable to Contractor or*
*parties for which Contractor is responsible, delays in excess of 90 days,*
*individually ~~or cumulatively~~, shall entitle Subcontractor to additional*
*compensation for any wage rate increase cost incurred as a result*
*thereof."*



Article 6.e. At the end of the paragraph, add the following sentence:
*"For delays caused in part by Subcontractor, Subcontractor shall be*
*responsible only for its proportionate share of liquidated damages*
*as assessed by the Owner."*

Article 8. a. In lines 5 and 6 delete the words *"two (2)"* and insert in lieu thereof the
words *"three (3)"*. Also in line 6 after the word *"eliminated"* insert the
phrase *"or commenced to be eliminated"*. ~~At line 8 after the word~~
~~"default" insert a period and delete the remainder of the sentence.~~
At line 11 delete the words *"and equipment."*



Article 9. a. line 4 after the word *"proceeding"* change the period to a semi-colon and
insert *"provided, however, that Subcontractor shall be afforded the*
*opportunity to participate in all proceedings which affect Subcontractor's*
*interest."*



Article 11.a. At the beginning of the first sentence, insert
*"For so long as Contractor is current in its payment obligations under*
*this Subcontract, then"* and continue with the words "In the event"
changing the capital "I" in the word "In" to lower case.

Article 11.c. At line one after the word *"furnish"* insert the word *"partial"*. After
the word *"liens"* insert the phrase *"to the extent of payment received."*

Initials

Luke C Moore SHS
Washington DC
Page 3 of 4

Article 13. At line 2 after the words *"If the"* insert the words *"Contractors' Prime Contract"* and delete the following word *"Subcontract"*. At line 2 after the word *"convenience"* insert the words *"by the Owner"*. At the end of the paragraph, add *"If this Subcontract is terminated for convenience by Contractor without Owner's having terminated some or all of the Prime Contract, Subcontractor shall be paid by Contractor the amount which represents Subcontractor's costs incurred through termination, ~~including but not limited to such costs as restocking, cancellation of sub-subcontractors or purchase orders, as well as other costs to conclude the Subcontract~~, without regard for Contractor's having received payment from Owner."* 

Article 16.a At the end of the sentence. Add *"Notwithstanding the foregoing, Subcontractor shall not be responsible for increased fines or penalties due to Contractor's prior safety record.*

Article 18. At the end of the paragraph, add:
*"Notwithstanding the foregoing, Subcontractor shall not be responsible for costs of defense nor have any financial obligation if the Contract Documents specify patented materials or products which give rise to the suit or claim for infringement."*

Article 20. At the end of the –paragraph, add:
*"Notwithstanding the foregoing, should the Contract Documents not be in compliance with Federal, state or local laws, codes, ordinances and regulations, Subcontractor's obligation, when it becomes aware of same, shall be to bring this discrepancy to Contractor's attention. If Subcontractor is required to perform work beyond that contained in the Contract Document, Subcontractor shall be entitled to an equitable adjustment for same.*

Article 23.a. At line 2 delete the phrase *"within ten (10) calendar days."*

~~Article 23. b. At line 2 delete the word *"postmarked"* and insert in lieu thereof the word *"received"* and after the words *"or when"* insert the word *"actually".*~~

Initials _____

Luke C Moore SHS
Washington DC
Page 4 of 4


II **EXHIBIT A CONTRACT DOCUMENTS**

(Page 1 through 5) List of Specification Table of Content starting with
Division 01 general requirements and ending with Electrical Section 1681500 are
undated . **PLEASE INSERT DATE** <u>**APRIL 3, 2003.**</u>

**III EXHIBIT B SCOPE OF WORK**

PAGE 3 OF 4
**SUBCONTRACTOR'S WORK DOES NOT INCLUDE**

Item 2. change "*plumbing*" to "*piping*"

Item 17 Omit "-*use alternate for clearance of combustibles*"


Initials _____

# EXHIBIT A
## CONTRACT DOCUMENTS

The Contract between Coakley Williams Construction Inc. and the United States Government.

The following Specifications issued by the United States Government.

Table of Contents

DIVISION 01 GENERAL REQUIREMENTS

| | |
|---|---|
| 01000 | ADMINISTRATIVE REQUIREMENTS |
| 01020 | PRE-CONSTRUCTION AND PRE-WORK CONFERENCES |
| 01021 | PROGRESS MEETINGS |
| 01050 | JOB CONDITIONS |
| 01060 | SAFETY |
| 01200 | WARRANTY REQUIREMENT |
| 01312 | RESIDENT MANAGEMENT SYSTEM (RMS) |
| 01320 | PROJECT SCHEDULE |
| 01330 | SUBMITTAL PROCEDURES |
| 01420 | SOURCES FOR REFERENCE PUBLICATIONS |
| 01451 | CONTRACTOR QUALITY CONTROL |
| 01460 | SECURITY |
| 01510 | TEMPORARY CONSTRUCTION ITEMS |
| 01520 | PHOTOGRAPHIC DOCUMENTATION |
| 01561 | ENVIRONMENTAL PROTECTION |
| 01720 | AS-BUILT DRAWINGS - CADD |
| 01731 | CUTTING AND PATCHING PER A001 |

DIVISION 02 SITE WORK

| | |
|---|---|
| 02220 | DEMOLITION |
| 02230a | CLEARING AND GRUBBING |
| 022260 | EXCAVATION SUPPORT AND PROTECTION |
| 02300a | EARTHWORK |
| 02315a | EXCAVATION, FILLING AND BACKFILLING FOR BUILDINGS |
| 02316a | EXCAVATION, TRENCHING, AND BACKFILLING FOR UTILITIES SYSTEMS |
| 02364a | TERMITICIDE TREATMENT MEASURES FOR SUBTERRANEAN TERMITE CONTROL |
| 02510a | WATER DISTRIBUTION SYSTEM |
| 02531a | SANITARY SEWERS |
| 02556A | GAS DISTRIBUTION SYSTEM |

Initials _____

| | |
|---|---|
| 02620a | SUBDRAINAGE SYSTEM |
| 02630a | STORM-DRAINAGE SYSTEM |
| 02722a | AGGREGATE AND/OR GRADED-CRUSHED AGGREGATE BASE COURSE |
| 02751 | BITUMINOUS PAVING |
| 02754a | CONCRETE PAVEMENTS FOR SMALL PROJECTS |
| 02763a | PAVEMENT MARKINGS |
| 02770a | CONCRETE SIDEWALKS AND CURBS AND GUTTERS |
| 02815 | FOUNTAINS |
| 02821a | FENCING |
| 02870a | SITE FURNISHINGS |
| 02882 | PLAYGROUND EQUIPMENT |
| 02922 | SODDING |
| 02930a | EXTERIOR PLANTING |

DIVISION 03 CAST-IN-PLACE CONCRETE

| | |
|---|---|
| 03300N | CAST-IN-PLACE CONCRETE |

DIVISION 04 MASONRY

| | |
|---|---|
| 04200A | MASONRY |
| 04900 | RESTORATION AND CLEANING OF MASONRY IN HISTORIC STRUCTURES |

DIVISION 05 METALS

| | |
|---|---|
| 05120A | STRUCTURAL STEEL |
| 05210a | STEEL JOISTS |
| 05300a | STEEL DECKING |
| 05400a | COLD-FORMED STEEL FRAMING |
| 05500a | MISCELLANEOUS METAL |

DIVISION 06 WOODS & PLASTICS

| | |
|---|---|
| 06100a | ROUGH CARPENTRY |
| 06200A | FINISH CARPENTRY |
| 06410A | LAMINATE CLAD ARCHITECTURAL CASEWORK |
| 06415 | WOOD VENEER LABORATORY CASEWORK |

DIVISION 07 THERMAL & MOISTURE PROTECTION

| | |
|---|---|
| 07131 | ELASTOMERIC SHEET WATERPROOFING |
| 07212N | MINERAL FIBER BLANKET INSULATION |
| 07214N | BOARD AND BLOCK INSULATION |
| 07220a | ROOF INSULATION |
| 07311a | ROOFING, STRIP SHINGLES |
| 07551a | MODIFIED BITUMEN ROOFING |

Initials

| 07600a | SHEET METALWORK, GENERAL |
| 07810a | SPRAY-APPLIED FIREPROOFING |
| 07840a | FIRESTOPPING |
| 07900a | JOINT SEALING |

## DIVISION 08 DOORS & WINDOWS

| 08110 | STEEL DOORS AND FRAMES |
| 08120 | ALUMINUM FOORS AND FRAMES |
| 08210 | WOOD DOORS |
| 08330a | OVERHEAD ROLLING DOORS |
| 08520N | ALUMINUM WINDOWS |
| 08630 | METAL-FRAMED SKYLIGHTS |
| 08710 | DOOR HARDWARE |
| 08810a | GLASS AND GLAZING |
| 08900 | GLAZED CURTAIN WALL |

## DIVISION 09 FINISHES

| 09250 | GYPSUM BOARD |
| 09310A | CERAMIC TILE |
| 09510A | ACOUSTICAL CEILINGS |
| 09620A | RESILIENT ATHLETIC FLOORING |
| 09641N | WOOD ATHLETIC FLOORING |
| 09650A | RESILIENT FLOORING |
| 09680A | CARPET |
| 09840A | ACOUSTICAL WALL TREATMENT |
| 09900 | PAINTS AND COATINGS |
| 09963N | HIGH-BUILD GLAZE COATINGS |

## DIVISION 10 SPECIALTIES

| 10100A | VISUAL COMMUNICATIONS SPECIALTIES |
| 10160A | TOILET PARTITIONS |
| 10191N | CUBICLE TRACK AND HARDWARE |
| 10201N | METAL WALL AND DOOR LOUVERS |
| 10300 | FIREPLACES |
| 10440A | INTERIOR SIGNAGE |
| 10505N | STEEL CLOTHING LOCKERS |
| 10800A | TOILET ACCESSORIES |

## DIVISION 11 EQUIPMENT

| 11063 | STAGE CURTAINS |
| 11400A | FOOD SERVICE EQUIPMENT |
| 11490 | GYMNASIUM EQUIPMENT |

Initials

LUKE C. MOORE HIGH SCHOOL
WASHINGTON, DC
Page 4 of 11

11670        KILNS


DIVISION 12 FURNISHINGS

12490A        WINDOW TREATMENT
12600         THEATER CHAIRS
12627         LIBRARY SHELVING AND SECURITY SYSTEM

DIVISION 13 SPECIAL CONSTRUCTION

13100A        LIGHTNING PROTECTION SYSTEM
13202A        FUEL STORAGE SYSTEMS
13280A        ASBESTOS ABATEMENT PER A002
13286N        HANDLING OF LIGHTING BALLASTS AND LAMPS CONTAINING PCB'S
              AND MERCURY
13721         SMALL INTRUSION DETECTION SYSTEMS PER A001
13851         FIRE DETECTION AND ALARM SYSTEM, ADDRESSABLE
13920         FIRE PUMPS
13930         WET PIPE SPRINKLER SYSTEM, FIRE PROTECTION

DIVISION 14 CONVEYING SYSTEMS

14240A        ELEVATORS, HYDRAULIC
14440         WHEELCHAIR LIFTS

DIVISION 15 MECHANICAL

15070A        SEISMIC PROTECTION FOR MECHANICAL EQUIPMENT
15080         THERMAL INSULATION FOR MECHANICAL SYSTEMS
15181A        CHILLED AND CONDENSER WATER PIPING AND ACCESSORIES
15182A        REFRIGERANT PIPING
15185         LOW TEMPERATURE WATER (LTW) HEATING SYSTEM
15190A        GAS PIPING SYSTEMS
15400         PLUMBING, GENERAL PURPOSE
15515         LOW PRESSURE WATER HEATING BOILERS (OVER 800,000 BTU/HR
              OUTPUT)
15620A        LIQUID CHILLERS
15700A        UNITARY HEATING AND COOLING EQUIPMENT
15771         ELECTRIC HEAT TRACING CABLES
15895         AIR SUPPLY, DISTRIBUTION, VENTILATION, AND EXHAUST SYSTEM
15951         DIRECT DIGITAL CONTROL FOR HVAC
15990         TESTING, ADJUSTING, AND BALANCING OF HVAC SYSTEMS


Initials 

DIVISION 16 ELECTRICAL

| | |
|---|---|
| 16261N | VARIABLE FREQUENCY DRIVE SYSTEMS UNDER 600 VOLTS |
| 16264 | DIESEL-GENERATOR SET, STATIONARY 15-300 KW, STANDBY APPLICATIONS |
| 16403A | SWITCHBOARDS AND PANELBOARDS |
| 16410A | AUTOMATIC TRANSFER SWITCH |
| 16415 | ELECTRICAL WORK, INTERIOR |
| 16528 | EXTERIOR LIGHTING |
| 16551 | THEATRICAL LIGHTING |
| 16710 | TELEPHONE AND DATA DISTRIBUTION SYSTEM |
| 16711 | SWITCHES AND ROUTERS |
| 16721 | INTERCOMMUNICATION AND TIME PROGRAM SYSTEM |
| 16722 | CAFETERIA, AUDITORIUM, AND GYMNASIUM SOUND SYSTEMS |
| 16751 | CLOSED CIRCUIT TELEVIONS SYSTEMS PER A001 |
| 16785a | TELEVISION CONTROL AND HEAD END EQUIPMENT |
| 16815a | CABLE TELEVISION PREMISES DISTRIBUTION SYSTEM |

The following drawings issued by the United States Government **NOT DATED** by the Government.

| | |
|---|---|
| T-1 | TITLE SHEET |
| T-2 | INDEX SHEET |
| | |
| C-1 | GENERAL NOTES AND LEGENDS |
| C-2 | EXISTING CONDITIONS PLAN |
| C-3 | DEMOLITION PLAN |
| C-4 | SITE IMPROVEMENT PLAN |
| C-5 | GRADING PLAN |
| C-6 | SITE DETAILS 1 |
| C-7 | SITE DETAILS 2 |
| C-8 | SITE DETAILS 3 |
| C-9 | UTILITY PLAN |
| C-10 | STORMWATER MANAGEMENT CALCULATIONS |
| C-11 | STORMWATER MANAGEMENT DETAILS |
| C-12 | UTILITY DETAILS 1 |
| C-13 | UTILITY DETAILS 2 |
| C-14 | UTILITY PROFILES |
| C-15 | EROSION AND SEDIMENT CONTROL PLAN |
| C-16 | EROSION AND SEDIMENT CONTROL NOTES & DETAILS 1 |
| C-17 | EROSION AND SEDIMENT CONTROL NOTES & DETAILS 2 |
| C-18 | SUBSURFACE EXPLORATION BORING LOGS 1-6 |
| C-19 | SUBSURFACE EXPLORATION BORING LOGS 7-12 |
| C-20 | SUBSURFACE EXPLORATION BORING LOGS 13-18 |

Initials

LUKE C. MOORE HIGH SCHOOL
WASHINGTON, DC
Page 6 of 11

| | |
|---|---|
| LA-1 | LANDSCAPE PLAN |
| LA-2 | LANDSCAPE PLAN NOTES & DETAILS |
| | |
| A-0.1 | CODE STUDY PLAN – MAIN LEVEL |
| A-0.2 | CODE STUDY PLAN – UPPER AND LOWER LEVELS |
| A-0.3 | ARCHITECTURAL SITE PLAN / OVERALL PLAN |
| A-0.4 & A-0.5 | PHASING PLANS – DELETED BY AMMENDMENT 07 |
| | |
| D-1.1 | LOWER LEVEL DEMOLTION PLAN |
| D-1.2 | MAIN LEVEL DEMOLITION PLAN |
| D-1.3 | UPPER LEVEL DEMOLITION PLAN |
| D-1.4 | DEMOLITION SECTIONS |
| D-1.5 | DEMOLITION SECTIONS |
| D-1.6 | DEMOLITION SECTIONS |
| D-1.7 | DEMOLITION SECTIONS |
| D-2.1 | DEMOLITION ELEVATIONS |
| D-2.2 | DEMOLITION ELEVATIONS |
| D-2.3 | DEMOLITION ELEVATIONS |
| | |
| A-1.1 | LOWER LEVEL FLOOR PLAN – AREA A |
| A-1.2 | LOWER LEVEL FLOOR PLAN – AREA B |
| A-1.3 | MAIN LEVEL FLOOR PLAN – AREA A |
| A-1.4 | MAIN LEVEL FLOOR PLAN – AREA B |
| A-1.5 | UPPER LEVEL FLOOR PLAN – AREA A |
| A-1.6 | UPPER LEVEL FLOOR PLAN – AREA B |
| A-1.7 | ROOF PLAN – AREA A |
| A-1.8 | ROOF PLAN – AREA B |
| A-1.9 | ROOF DETAILS |
| A-2.1 | ELEVATIONS |
| A-2.2 | ELEVATIONS |
| A-2.3 | ELEVATIONS |
| A-2.4 | ELEVATIONS |
| A-2.5 | ELEVATIONS AND DETAILS |
| A-3.1 | FINISH SCHEDULE |
| A-3.2 | DOOR SCHEDULE |
| A-3.3 | HEAD, JAMB, AND SILL DETAILS |
| A-3.4 | HEAD, JAMB, AND SILL DETAILS |
| A-3.5 | WINDOW DETAILS |
| A-3.6 | WINDOW DETAILS |
| A-3.7 | FRAME ELEVATIONS |
| A-3.8 | WINDOW, STOREFRONT, CURTAINWALL ELEVATIONS |
| A-3.9 | CURTAINWALL ELEVATIONS |
| A-3.10 | WALL TYPES |
| A-3.11 | WALL TERMINATION DETAILS |
| A-4.1 | BUILDING SECTIONS |

Initials

| A-4.2 | BUILDING SECTIONS |
|---|---|
| A-4.3 | BUILDING SECTIONS |
| A-4.4 | BUILDING SECTIONS |
| A-4.5 | WALL SECTIONS |
| A-4.6 | WALL SECTIONS |
| A-4.7 | WALL SECTIONS |
| A-4.8 | WALL SECTIONS – AUDITORIUM |
| A-4.9 | WALL SECTIONS |
| A-4.10 | WALL SECTIONS – GYMNASIUM |
| A-4.11 | WALL SECTIONS |
| A-4.12 | WALL SECTIONS |
| A-5.1 | STAIR PLANS AND SECTIONS |
| A-5.2 | STAIR PLANS AND SECTIONS |
| A-5.3 | STAIR PLANS AND SECTIONS |
| A-5.4 | STAIR DETAILS |
| A-5.5 | TYPICAL DETAILS |
| A-5.6 | TOILET PLANS |
| A-5.7 | PLAN DETAILS |
| A-5.8 | PLAN DETAILS |
| A-5.9 | MISCELLANEOUS DETAILS |
| A-6.1 | INTERIOR ELEVATIONS |
| A-6.2 | INTERIOR ELEVATIONS |
| A-6.3 | INTERIOR ELEVATIONS |
| A-6.4 | INTERIOR ELEVATIONS |
| A-6.5 | INTERIOR ELEVATIONS |
| A-7.1 | LOWER LEVEL REFLECTED CEILING PLAN AND DETAILS |
| A-7.2 | MAIN LEVEL REFLECTED CEILING PLAN |
| A-7.3 | UPPER LEVEL REFLECTED CEILING PLAN |
| A-9.1 | PARTIAL LOWER LEVEL FURNISHING PLAN – AREA A |
| A-9.2 | PARTIAL LOWER LEVEL FURNISHING PLAN – AREA B |
| A-9.3 | PARTIAL MAIN LEVEL FURNISHING PLAN – AREA A |
| A-9.4 | PARTIAL MAIN LEVEL FURNISHING PLAN – AREA B |
| A-9.5 | PARTIAL UPPER LEVEL FURNISHING PLAN – AREA A |
| A-9.6 | PARTIAL UPPER LEVEL FURNISHING PLAN – AREA B |
| A-9.7 | MILLWORK DETAILS |
| A-9.8 | CASEWORK DETAILS |
| A-9.9 | MILLWORK DETAILS |
| | |
| K-1 | KITCHEN EQUIPMENT PLAN |
| K-2 | BUILDING CONDITIONS & VENTILATION PLAN |
| K-3 | PLUMBING ROUGH-IN PLAN |
| K-4 | ELECTRICAL ROUGH-IN PLAN |
| K-5 | FABRICATION DETAILS |
| K-5.1 | STANDARD DETAILS |
| K-6 | UTILITY RACEWAY DETAILS |
| K-7 | UTILITY RACEWAY DETAILS |

Initials

| K-8 | VENTILATOR DETAILS |
|---|---|
| S-1.1 | STRUCTURAL NOTES |
| S-1.2 | STRUCTURAL NOTES, SYMBOL LEGEND, & ABBREVIATIONS |
| S-2.1 | TYPICAL DETAILS |
| S-2.2 | TYPICAL DETAILS |
| S-2.3 | TYPICAL DETAILS |
| S-2.4 | TYPICAL DETAILS |
| S-3.1 | FOUNDATION PLAN – AREA A |
| S-3.2 | FOUNDATION PLAN – AREA B |
| S-4.1 | MAIN LEVEL FRAMING PLAN – AREA A |
| S-4.2 | MAIN LEVEL FRAMING PLAN – AREA B |
| S-5.1 | UPPER LEVEL FRAMING PLAN – AREA A |
| S-5.2 | UPPER LEVEL FLOOR PLAN – AREA B |
| S-6.1 | ROOF FRAMING PLAN – AREA A |
| S-6.2 | ROOF FRAMING PLAN – AREA B |
| S-7.1 | COLUMN SCHEDULE |
| S-8.1 | FOUNDATION SECTIONS |
| S-8.2 | FOUNDATION SECTIONS |
| S-8.3 | FOUNDATION SECTIONS |
| S-8.4 | FOUNDATION SECTIONS |
| S-9.1 | FLOOR SECTIONS |
| S-9.2 | FLOOR SECTIONS |
| S-9.3 | FLOOR SECTIONS |
| S-10.1 | ROOF SECTIONS |
| S-10.2 | ROOF SECTIONS |
| S-10.3 | ROOF SECTIONS |
| MD1.1 | LOWER LEVEL PLAN – AREA B DEMOLITION |
| MD1.2 | MAIN LEVEL PLAN – AREA B DEMOLITION |
| MD1.3 | UPPER LEVEL PLAN – AREA B DEMOLITION |
| M1.1 | LOWER LEVEL PLAN – AREA A HVAC |
| M1.2 | LOWER LEVEL PLAN – AREA B HVAC |
| M1.3 | MAIN LEVEL PLAN – AREA A HVAC |
| M1.4 | MAIN LEVEL PLAN – AREA B HVAC |
| M1.5 | UPPER LEVEL PLAN – AREA A HVAC |
| M1.6 | UPPER LEVEL PLAN – AREA B HVAC |
| M1.7 | ROOF PLAN HVAC |
| M2.1 | LOWER LEVEL PLAN – AREA A PIPING |
| M2.2 | LOWER LEVEL PLAN – AREA B PIPING |
| M2.3 | MAIN LEVEL PLAN – AREA A PIPING |
| M2.4 | MAIN LEVEL PLAN – AREA B PIPING |
| M2.5 | UPPER LEVEL PLAN – AREA A PIPING |
| M2.6 | UPPER LEVEL PLAN – AREA B PIPING |
| M3.1 | BOILER ROOM PART PLAN |
| M3.2 | MECHANICAL ROOM PART PLAN |

Initials

| M3.3 | SECTIONS |
| M3.4 | SECTIONS |
| M4.1 | SYSTEM DIAGRAMS |
| M4.2 | DETAILS AND DIAGRAMS |
| M4.3 | DETAILS AND DIAGRAMS |
| M4.4 | DETAILS AND DIAGRAMS |
| M5.1 | SYMBOLS LIST AND DESIGN CRITERIA |
| M5.2 | SCHEDULES |
| M5.3 | SCHEDULES |
| M5.4 | SCHEDULES |
| M5.5 | SCHEDULES |
| M5.6 | SCHEDULES |
| M6.1 | ATC SEQUENCES |
| M6.2 | ATC SEQUENCES |
| M6.3 | ATC SEQUENCES |
| M6.4 | ATC SEQUENCES |
| M6.5 | ATC SEQUENCES AND SCHEDULE |
|  |  |
| P1.1 | LOWER LEVEL PLAN – AREA A PLUMBING |
| P1.2 | LOWER LEVEL PLAN – AREA B PLUMBING |
| P1.3 | MAIN LEVEL PLAN – AREA A PLUMBING |
| P1.4 | MAIN LEVEL PLAN – AREA B PLUMBING |
| P1.5 | UPPER LEVEL PLAN – AREA A PLUMBING |
| P1.6 | UPPER LEVEL PLAN – AREA B PLUMBING |
| P2.1 | PART PLANS TOILET ROOMS |
| P2.2 | PART PLAN – KITCHEN |
| P3.1 | DETAILS, DIAGRAMS & SCHEDULES |
| P3.2 | SANITARY RISER DIAGRAMS |
| P3.3 | SANITARY RISER DIAGRAMS |
| P3.4 | DOMESTIC WATER RISER DIAGRAMS |
| P3.5 | DOMESTIC WATER AND GAS RISER DIAGRAMS |
|  |  |
| FA-0.1 | FIRE ALARM GENERAL NOTES, SYMBOLS LIST & RISER DIAGRAM |
| FA-1.1 | FIRE ALARM LOWER LEVEL FLOOR PLAN – AREA A |
| FA-1.2 | FIRE ALARM LOWER LEVEL FLOOR PLAN – AREA B |
| FA-1.3 | FIRE ALARM MAIN LEVEL FLOOR PLAN – AREA A |
| FA-1.4 | FIRE ALARM MAIN LEVER FLOOR PLAN – AREA B |
| FA-1.5 | FIRE ALARM UPPER LEVEL FLOOR PLAN – AREA A |
| FA-1.6 | FIRE ALARM UPPER LEVEL FLOOR PLAN – AREA B |
|  |  |
| FP-0.1 | AUTOMATIC SPRINKLER – GENERAL NOTES, SYMBOLS, & DETAILS |
| FP-1.1 | AUTOMATIC SPRINKLER LOWER LEVEL FLOOR PLAN – AREA A |
| FP-1.2 | AUTOMATIC SPRINKLER LOWER LEVEL FLOOR PLAN – AREA B |
| FP-1.3 | AUTOMATIC SPRINKLER MAIN LEVEL FLOOR PLAN – AREA A |
| FP-1.4 | AUTOMATIC SPRINKLER MAIN LEVEL FLOOR PLAN – AREA B |
| FP-1.5 | AUTOMATIC SPRINKLER UPPER LEVEL FLOOR PLAN – AREA A |

Initials

LUKE C. MOORE HIGH SCHOOL
WASHINGTON, DC
Page 10 of 11

FP-1.6       AUTOMATIC SPRINKLER UPPER LEVEL FLOOR PLAN – AREA B
FP-1.7       AUTOMATIC SPRINKLER ATTIC AREA FLOOR PLAN

E0.1         SYMBOLS LIST
E0.2         ELECTRICAL SITE PLAN
ED1.1        LOWER LEVEL PLAN – AREA B DEMOLITION
ED1.2        MAIN LEVEL PLAN – AREA B DEMOLITION
ED1.3        UPPER LEVEL PLAN – AREA B DEMOLITION
ED1.4        LOWER LEVEL PLAN – AREA B TEMPORARY FEEDER
E1.1         LOWER LEVEL PLAN – AREA A LIGHTING
E1.2         LOWER LEVEL PLAN – AREA B LIGHTING
E1.3         MAIN LEVEL PLAN – AREA A LIGHTING
E1.4         MAIN LEVEL PLAN – AREA B LIGHTING
E1.5         UPPER LEVEL PLAN – AREA A LIGHTING
E1.6         UPPER LEVEL PLAN – AREA B LIGHTING
E2.1         LOWER LEVEL PLAN – AREA A POWER
E2.2         LOWER LEVEL PLAN – AREA B POWER
E2.3         MAIN LEVEL PLAN – AREA A POWER
E2.4         MAIN LEVEL PLAN – AREA B POWER
E2.5         UPPER LEVEL PLAN – AREA A POWER
E2.6         UPPER LEVEL PLAN – AREA B POWER
E2.7         PART ROOF PLANS – AREA A & B POWER
E2.8         ROOF PLAN LIGHTNING PROTECTION
E3.1         LOWER LEVEL PLAN – AREA A SYSTEMS
E3.2         LOWER LEVEL PLAN – AREA B SYSTEMS
E3.3         MAIN LEVEL PLAN – AREA A SYSTEMS
E3.4         MAIN LEVEL PLAN – AREA B POWER AND COMMUNICATIONS
E3.5         UPPER LEVEL PLAN – AREA A SYSTEMS
E3.6         UPPER LEVEL PLAN – AREA B SYSTEMS
E4.1         PART PLANS POWER AND COMMUNICATIONS
E4.2         PART PLANS POWER AND COMMUNICATIONS
E4.3         PART PLANS POWER AND COMMUNICATIONS
E5.1         ELECTRICAL DIAGRAMS
E5.2         ELECTRICAL DIAGRAMS
E5.3         ELECTRICAL DIAGRAMS
E5.4         ELECTRICAL DIAGRAMS
E5.5         ELECTRICAL DIAGRAMS
E5.6         ELECTRICAL DIAGRAMS
E6.1         ELECTRICAL DETAILS
E6.2         LIGHT FIXTURE SCHEDULE AND DETAILS
E6.3         ELECTRICAL DETAILS
E6.4         DETAILS
E6.5         DETAILS
E7.1         SCHEDULES
E7.2         SCHEDULES
E7.3         SCHEDULES

Initials 

LUKE C. MOORE HIGH SCHOOL
WASHINGTON, DC
Page 11 of 11

E7.4    SCHEDULES
E7.5    SCHEDULES
E7.6    SCHEDULES

The following addendums issued by the United States Government.

| Addendum # | Dated |
|---|---|
| 01 | 04/23/03 |
| 02 | 04/30/03 |
| 03 | 05/01/03 |
| 04 | 05/07/03 |
| 05 | 05/09/03 |
| 06 | 05/13/03 |
| 07 | 08/04/03 |
| 08 | 08/06/03 |
| 09 | 08/13/03 |
| 10 | 08/15/03 |
| 11 | 11/14/03 |
| 12 | 11/24/03 |

The Wage Scale General Decision No. DC030003 Modification # 2 dated 10/31/03.

*The documents listed above are available for review at Coakley William's main office during normal business hours.*

Initials 

NERAL DECISION DC030003 10/31/03 DC3
eneral Decision Number: DC030003 10/31/2003

uperseded General Decision Number: DC020003

tate: District of Columbia

cnstruction Type: Building

ounty: District of Columbia Statewide.

UILDING CONSTRUCTION PROJECTS (Does not include single family
.omes and apartments up to and including 4 stories)

| odification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 10/03/2003 |
| 2 | 10/31/2003 |

ASBE0024-001 03/01/2003

|  | Rates | Fringes |
|---|---|---|

Asbestos Worker/Heat and
Frost Insulator
    Includes application of
all insulating
materials, protective
coverings, coatings and
finishes to all types
of mechanical systems.
Also the application of
firestopping material
for wall openings and
penetrations in walls,
floors, ceilings and
curtain walls...............$ 23.35        10.35

---

ASBE0024-002 03/01/2003

|  | Rates | Fringes |
|---|---|---|

Hazardous Material Handler
    Includes preparation,
wetting, stripping,
removal, scrapping,
vacuuming, bagging and
disposing of all
insulation materials,
whether they contain
asbestos or not, from
mechanical systems..........$ 12.37       3.91

---

BRDC0001-001 04/28/2002

|  | Rates | Fringes |
|---|---|---|

Bricklayer....................$ 23.75       5.37

---

CARP0132-006 05/01/2002

|  | Rates | Fringes |
|---|---|---|

Carpenter (Including
Drywall Hanging)    $ 21.57       3.76

Piledriver...................$ 19.95          4.50

-------------------------------------------------------------------

ELEC0026-003 09/02/2002

                                Rates          Fringes

 ommunication Technician.......$ 20.60          5.09

SCOPE OF WORK: Includes low voltage construction,
installation, maintenance and removal of teledata facilities
(voice, data and video) including outside plant, telephone
and data inside wire, interconnect, terminal equipment,
central offices, PABX, fiber optic cable and equipment,
railroad communications, micro waves, VSAT, bypass, CATV, WAN
(Wide area networks), LAN (Local area networks) and ISDN
(Integrated systems digital network).

WORK EXCLUDED: The installation of computer systems in
industrial applications such as assembly lines, robotics and
computer controller manufacturing systems.  The installation
of conduit and/or raceways shall be installed by Inside
Wiremen. On sites where there is no Inside Wireman employed,
the Teledata Technician may install raceway or conduit not
greater than 10 feet.  Fire alarm work is excluded on all new
construction sites or wherever the fire alarm system is
installed in conduit.  All HVAC control work.

-------------------------------------------------------------------

ELEC0026-016 06/02/2003

                                Rates          Fringes

Electrician (Excluding
Communication-Low Voltage
Wiring)
.........................$ 28.75          8.22+a

a. PAID HOLIDAYS: New Year's Day, Martin Luther King's
Birthday, Inauguration Day, Memorial Day, Fourth of July,
Labor Day, Veterans Day, Thanksgiving Day, the day after
Thanksgiving and Christmas Day or days designated as legal
holidays by the Federal Government.

-------------------------------------------------------------------

ENGI0077-009 05/01/2003

                                Rates          Fringes

Power equipment operators:
    Boom Trucks.................$ 22.87          5.37+a
    Cranes (35 tons and
    over).......................$ 24.04          5.37+a
    Cranes (under 35 tons)......$ 23.58          5.37+a
    Forklifts...................$ 16.50          5.37+a
    Piledrivers.................$ 23.58          5.37+a

a. PAID HOLIDAYS:
New Years Day, Inaugural Day, Decoration Day, Independence
Day, Labor Day, Martin Luther King's Birthday, Veterans Day,
Thanksgiving Day, Friday after Thanksgiving and Christmas Day.

b. PREMIUM PAY:
Tower cranes and cranes 100-ton and over to receive $1.00 per
hour premium over Group One.

-------------------------------------------------------------------

IRON0005-001 06/01/2003

                                Rates          Fringes

```
Structural, Ornamental
and Chain Link Fence...... $ 24.00          8.975
```

---

IRON0201-003 05/01/2003

|                             | Rates      | Fringes |
|-----------------------------|------------|---------|
| Ironworker, Reinforcing...... | $ 22.45  | 9.75    |

---

LABO0074-001 06/01/2002

|                             | Rates      | Fringes |
|-----------------------------|------------|---------|
| Laborer: Skilled.............. | $ 16.66 | 2.95    |

FOOTNOTE: Potmen, power tool operator, small machine
operator, concrete labor including concrete preparation,
signalmen, laser beam operator, waterproofer, open caisson,
test pit, underpinning, pier hole and ditches, laggers and
all work associated with lagging that is not expressly
stated, strippers, operator of hand derricks, vibrator
operators, pipelayers, or tile layers, operators of
jackhammers, paving breakers, spaders or any machine that
does the same general type of work, scaffold builders,
operators of towmobiles, scootcretes, buggymobiles and other
machines of similar character, operators of tampers and
rammers, and other machines that do the same general type of
work, whether powered by air, electric or gasoline builders
of trestle scaffolds over one tier high and sand blasters,
power and chain saw operators used in clearing, installers of
well points, wagon drill operators, acetylene burners and
licensed powdermen.

---

LABO0456-012 06/01/2003

|                             | Rates      | Fringes |
|-----------------------------|------------|---------|
| Laborers:                   |            |         |
| Mason Tenders, Brick........ | $ 13.79  | 2.95    |
| Mortarmen, Scaffold         |            |         |
| Builders................... | $ 14.47   | 2.95    |

---

MARB0002-002 05/01/2003

|                             | Rates      | Fringes |
|-----------------------------|------------|---------|
| Marble & Stone Mason.......... | $ 26.67 | 9.40    |

INCLUDES pointing, caulking and cleaning of All types of
masonry, brick, stone and cement structures; EXCEPT pointing,
caulking and cleaning of existing masonry, brick, stone and
cement (restoration work)

---

MARB0003-001 05/01/2002

|                             | Rates      | Fringes |
|-----------------------------|------------|---------|
| Mosaic & Terrazzo Worker,   |            |         |
| Tile Layer.................... | $ 19.98 | 7.48    |

---

MARB0003-004 05/01/2002

|                             | Rates      | Fringes |
|-----------------------------|------------|---------|

Finisher.....................$ 16.42        6.52

---

PAIN0051-004 06/16/2003

|  | Rates | Fringes |
|---|---|---|
| Glazier | | |
| Contracts $2,000,000 and under.................$ 21.12 | | 6.66 |
| Contracts over $2,000,000.................$ 22.34 | | 6.66 |

---

PAIN0051-010 06/16/2003

|  | Rates | Fringes |
|---|---|---|
| Painters: | | |
| Brush, Roller, Spray and Drywall Finishers.......$ 20.94 | | 6.66 |

---

PLAS0891-003 05/01/2002

|  | Rates | Fringes |
|---|---|---|
| Cement Mason...................$ 21.87 | | 3.895 |

---

PLUM0005-007 08/01/2003

|  | Rates | Fringes |
|---|---|---|
| Plumber | | |
| ALL Other Work.............$ 28.22 | | 10.19+a |
| Apartment Buildings over 4 stories (except hotels)....................$ 18.28 | | 6.84+a |

a. PAID HOLIDAYS:  Labor Day, Veterans' Day, Thanksgiving Day and the day after Thanksgiving, Christmas Day, New Year's Day, Martin Luther King's Birthday, Memorial Day and the Fourth of July.

---

PLUM0602-006 08/01/2003

|  | Rates | Fringes |
|---|---|---|
| Steamfitter, Refrigeration & Air Conditioning Mechanic (Including HVAC Pipe Work).....$ 28.17 | | 10.22 |

a. PAID HOLIDAYS:
New Year's Day, Independence Day, Thanksgiving Day and the day after Thanksgiving, Labor Day and Christmas Day.

---

SFDC0669-001 04/01/2003

|  | Rates | Fringes |
|---|---|---|
| Sprinkler Fitter..............$ 27.60 | | 7.10 |

---

SHEE0100-002 07/01/2003

|  | Rates | Fringes |
|---|---|---|

(Including HVAC Duct Work)....$ 27.13          8.81

---------------------------------------------------------------

SUDC2000-001 04/12/2000

```
                              Rates          Fringes
|
 aborer, Unskilled...........$ 11.83          2.23
```

Pointer, caulker and cleaner
    INCLUDES pointing,
    caulking and cleaning
    of existing masonry,
    brick, stone and cement
    structures (restoration
    work); EXCLUDES
    pointing, caulking and
    cleaning of new or
    replacement masonry,
    brick, stone and cement.....$ 20.00

---------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing
operation to which welding is incidental.
================================================================

Unlisted classifications needed for work not included within
the scope of the classifications listed may be added after
award only as provided in the labor standards contract clauses
(29CFR 5.5 (a) (1) (ii)).

---------------------------------------------------------------

In the listing above, the "SU" designation means that rates
listed under the identifier do not reflect collectively
  gained wage and fringe benefit rates.  Other designations
  dicate unions whose rates have been determined to be
prevailing.

---------------------------------------------------------------

                . WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can
be:

*   an existing published wage determination
*   a survey underlying a wage determination
*   a Wage and Hour Division letter setting forth a position on
    a wage determination matter
*   a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests
for summaries of surveys, should be with the Wage and Hour
Regional Office for the area in which the survey was conducted
because those Regional Offices have responsibility for the
Davis-Bacon survey program. If the response from this initial
contact is not satisfactory, then the process described in 2.)
and 3.) should be followed.

With regard to any other matter not yet ripe for the formal
process described here, initial contact should be with the
 ranch of Construction Wage Determinations.  Write to:

      Branch of Construction Wage Determinations
  )
      Wage and Hour Division

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

.) If the answer to the question in 1.) is yes, then an
)rested party (those affected by the action) can request
c.iew and reconsideration from the Wage and Hour Administrator
See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

'he request should be accompanied by a full statement of the
.nterested party's position and by any information (wage
)ayment data, project description, area practice material,
:tc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an
.nterested party may appeal directly to the Administrative
teview Board (formerly the Wage Appeals Board).  Write to:

Administrative Review Board

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

, All decisions by the Administrative Review Board are final.

END OF GENERAL DECISION

LUKE C. MOORE HIGH SCHOOL
Washington, DC
Page 1 of 4

## EXHIBIT B
## SCOPE OF WORK

The Subcontractor warrants that he has examined the Contract Documents with an extra level of care, has carefully compared them to one another, and has included in the Contract some items which may not yet be detailed, specified, or coordinated at the time of the execution of this Contract, but which the Subcontractor knows from his experience will be necessary to render a complete job in accordance with the intent of the Contract Documents. This article shall not be construed to obligate the Subcontractor to include in his scope of work and contract sum anything not reasonably inferable from the Contract Documents.

Furnish materials, labor and equipment to perform all work in accordance with the Contract Documents identified in Exhibit A and:

## SPECIFICATION SECTION

| | |
|---|---|
| 13202A | FUEL STORAGE SYSTEM (deleted per A007 item 17) |
| 15080 | THERMAL INSULATION FOR MECHANICAL SYSTEMS |
| 15181A | CHILLED AND CONDENSER WATER PIPING AND ACCESSORIES |
| 15182A | REFRIGERANT PIPING |
| 15185 | LOW TEMPERATURE WATER (LTW) HEATING SYSTEM |
| 15190A | GAS PIPING SYSTEMS |
| 15400 | PLUMBING, GENERAL PURPOSE |
| 15515 | LOW PRESSURE WATER HEATING BOILERS (OVER 800,000 BTU/HR OUTPUT) |
| 15620A | LIQUID CHILLERS |
| 15700A | UNITARY HEATING AND COOLING EQUIPMENT |
| 15771 | ELECTRICAL HEAT TRACING CABLES |
| 15895 | AIR SUPPLY, DISTRIBUTION, VENTILATION, AND EXHAUST SYSTEM |
| 15951 | DIRECT DIGITAL CONTROL FOR HVAC |
| 15990 | TESTING, ADJUSTING, AND BALANCING OF HVAC SYSTEMS |

## INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:

1.  Furnish and install all underground piping including excavation, backfill, and compaction, and protection of suitable backfill material excavated. The work includes all utilities to 5 feet outside the building lines including tie-ins,
2.  Furnish and install backflow preventer for sprinkler,
3.  Furnish and install sanitary sewer system including waste lines, floor drains, cleanouts, and vent piping,

Initials _____

LUKE C. MOORE HIGH SCHOOL
Washington, DC
Page 2 of 4

4.  Furnish and install domestic water system including backflow preventer, wall hydrants, hose bibs, hot and cold water piping, make-up water piping, water heaters and storage tank. Hose bibs and wall hydrants shall be non-freeze type as required,

5.  Furnish and install low temperature heating system. The work includes associate piping, boiler valves and insulation,

6.  Disconnect piping, including capping of lines and equipment to be removed by others,

7.  Furnish and install plumbing fixtures including water closets (floor mounted and wall hung), urinals, lavatories, (floor mounted and wall hung), sinks (mop and laundry tubs), water coolers and service sinks, etc. All wall hung fixture's to be mounted on carriers,

8.  Connect to fume hoods provided by others specified in section 06415 Item 2.9,

9.  Fuel storage system ….has been deleted per A007 item 17,

10. Furnish and install gas piping system,

11. Furnish and install HVAC equipment including liquid chillers, unitary equipment units, air handling units, fan coil units, expansion tanks, unit heaters, cabinets unit heaters, exhaust fans, toilet exhaust fans and supply air fans,

12. Furnish and install all condensate drain lines. Provide insulation as indicated or specified,

13. Furnish and install all ductwork, room supply and return, accessories, supply grilles, return registers, linear diffusers, transfers and exhaust grilles where required and/or necessary. Fire dampers shall be furnished and installed as shown on Contract Drawings,

14. Architectural louvers will be provided by others but tied into and blanked off (if required) by this subcontractor. Louvers/grilles at interior partitions and ceilings and brick vents/backboxes at exterior walls are finished and installed by this subcontractor. Any sheet metal plenum boxes are the work of this Contract,

15. Furnish and install heat trace to piping and traps as indicated or required,

16. Provide pipe and duct insulation as required,

17. Insulate supply and/or sound line and return ductwork as required. Insulate mechanical equipment not pre-insulated in the factory,

18. Provide fully direct digital controls,

19. Provide and install all required vibration and sound isolation systems required to attain acceptable noise levels including and additional changes required to meet the noise levels specified after equipment is inspected and under operation during actual conditions,

20. Furnish and install all drip pans where shown and/or required,

21. Fire safe and seal all wall, ceiling and floor penetrations as required,

22. Provide all integral starters and disconnects, valves and transformers, VFD's, control panels and devices, pumps and auxiliary devices as specified or required for the proper operation and control of all equipment,

23. Provide all equipment curbs and supports not shown on the structural plans,

24. Provide identification labels where required to provide direction and access to all equipment, ducts, fire dampers, and piping behind and in walls and ceilings,

Initials

LUKE C. MOORE HIGH SCHOOL
Washington, DC
Page 3 of 4

25. The work includes all necessary piping, ductwork, refrigerant piping, chilled water piping, water make-up and drains for ice machines, open site drains, area drains, trench drains, condensate piping, vacuum breakers, flexible connections, chrome plated connections, etc. to connect and make operational all equipment provided by others,

26. Perform all testing, air and water balancing reports and certifications, disinfecting, chemical treatment of systems as required,

27. Provide all systems complete and operational,

28. Furnish and install roof drains,

29. Furnish and install all sleeves or blockouts during concrete work including providing temporary water,

30. Provide core drilling as required,

31. Provide payment and performance bonds,

32. Subcontractor will contract a minimum of 15% of this contract to SDB subcontractors. Subcontractor endeavor to meet minimum 8% to woman owned businesses and 3% to veteran and disabled veteran owned business, and shall document "best efforts" in the event these fall short of the target goals,

33. Provide support to quality control efforts in accordance with Section 01451 "Contractor Quality Control". This is to include timely submittals, technical personnel on an as-needed basis for QC inspection (foreman or part-time qualified personnel may perform QC duties), documentation of processes undertaken by Subcontractor and other assistance for quality control, test, safety and MSDS requirements as they pertain to Mechanical work. All requirements of Article 3.8 entitled "Completion Inspection" as they pertain to Mechanical work shall be the responsibility of Subcontractor,

34. Contractor may use permanent system for temporary heat and ventilation. Subcontractor to provide extended warranties and construction filters,

35. Include salvage of existing window a/c units and plumbing fixtures to a location as specified by Owner,

36. Include reclamation of refrigerants from existing condensing units prior to demo by others,

35. All debris and trash generated as a result of scope herein shall be removed in a timely manner by Subcontractor to onsite dumpster supplied by others, and

36. Include timely identification, cut/cap, refrigerant salvage and make safe preparations for demolition by others.

## SUBCONTRACTORS WORK DOES NOT INCLUDE:

1. Cutting and Patching
2. Demolition of Ductwork and Plumbing
3. Painting,
4. Power Wiring,

Initials _____

LUKE C. MOORE HIGH SCHOOL
Washington, DC
Page 4 of 4

5.    Concrete work.
6.    Sales tax
7.    Kitchen equipment and associated refrigerant piping
8.    X-ray investigation
9.    Dumpster
10.   Sub-soil drainage system
11.   Asbestos abatement
12.   Fire protection/sprinkler
13.   flashing/counter flashing
14.   Cut/patch roof
15.   Kitchen refrigerant piping to equipment by others
16.   Supply or installation of kitchen equipment
17.   Two (2) hour rating on exhaust ductwork – use alternate for clearance of combustibles
18.   Radon vent

## OTHER PROVISIONS OF THIS CONTRACT:

1.    For additional provisions of the scope of work, see three pages titled "Other Provisions of this Contract Agreement", and
2.    In the event that conflicts may occur within the contract drawings, the more stringent or costly work shall apply.
3.    Project is no longer phased, except that the old building shall not be available until the approximate possession date of 7/15/04.
4.    The Optional Bid Items (3-1-04 attached) are not included in this subcontract and nor under consideration by Owner.
5.    The Revised Optional Bid Items (3-1-04 attached) are not included but shall be bid as Alternate Adds to this Contract. The price submitted shall be firm for the duration of the contract. Time shall be adjusted based on actual acceptance date of the Revised Optional Bid Items as authorized by Owner.
6.    Bid Amendments 001 thru 012 are included in the Scope of this Contract.

Initials

## OTHER PROVISIONS OF THIS CONTRACT AGREEMENT

1. Subcontractor agrees to provide license permits, registration inspections, testing, notifications, certifications, field monitoring and associated fees for the work of this contract.

2. Schedule - Subcontractor agrees to assist General Contractor with CPM schedule, updating, and reporting; and to perform in accordance with the duration's set forth in the schedule for the Project. General Contractor may direct the Subcontractor to start activities earlier than reflected on the above referenced schedule, in which event, Subcontractor will comply with said directive at no change in subcontract price and with no change in the duration of the subject activity.

3. Layout - Subcontractor agrees to provide all layout necessary for its work from major column lines and benchmarks provided by General Contractor.

4. Temporary Work- Subcontractor agrees to provide all scaffolding, fences, sign, barriers and protection necessary for its work.

5. Temporary Work - Subcontractor will be allowed free use of small tool power outlets located at 100' intervals throughout the Project.   Unless noted otherwise herein, special power requirements for Subcontractor have not been provided for by General Contractor.

6. Submittals - Within 14 days of receipt of the notice to proceed, Subcontractor agrees to furnish all submittals. Subcontractor agrees to furnish all required submittals, shop drawings, coordination drawings, project data, samples, mock-ups, reporting and warranties and close-out submittals in conformance with the Contract Documents, all in sufficient time and of sufficient quality to avoid causing a delay in the progress of the Work.  In the event a resubmittal is required, Subcontractor agrees to revise and resubmit with in 7 days of receipt of returned submittal.

7. Trash - Subcontractor agrees to daily clean up and placement of all trash and debris generated by its work into General Contractor's trash chute or dumpster at grade for removal from the site by others.

8. Where Subcontractor's Work includes the installation of an item furnished by others, Subcontractor shall ascertain, upon receipt of such item, that it is complete and undamaged, and shall install and protect such item against loss or damage until the final acceptance of the Work. Where Subcontractor's Work included the delivery of an item to another for installation, Subcontractor shall deliver such item complete and undamaged at the proper time, and shall furnish necessary information as handling and installation.

Initials _____

Luke C. Moore SHS
Washington, DC
Page 2 of 3

9.   Cutting - Subcontractor agrees to coordinate, core drill, sawcut penetrations and openings necessary for its work in accordance with the Contract Documents.

10.  Supports - Except as specifically noted otherwise in this Contract, Subcontractor agrees to provide all blocking, miscellaneous metals and any other materials necessary for the installation or support of its work other than the existing structure.  Further, Subcontractor agrees to coordinate its support work with the work of other Subcontractors.

11.  Coordination - Subcontractor agrees to provide a responsible individual for attendance at meetings scheduled by General Contractor to review production goals and work activities, to coordinate with the work of other trades and to resolve conflicts within 24 hours of notification.

12.  Accommodation - Subcontractor agrees to provide any out of sequence or comeback work, premium timework, or additional work necessary to accommodate and maintain the existing facility in full-uninterrupted operation.

13.  Traffic Control - Subcontractor agrees to provide for control of traffic, material and equipment deliveries, and to notify General Contractor a least 24 hours prior to any major delivery.

14.  Protection - Subcontractor agrees to protect the work to remain, from damage caused by its work.

15.  Noise - All work which exceeds noise levels specified in the Contract Documents will be completed after normal working hours.

16.  Bond - Subcontractor agrees to furnish the bond if required by Exhibit B "Scope of Work" pursuant to the Contract within ten (10) days of the date of this Contract.  The premium for said bond is included in the Contract price.

17.  Subcontractor will provide all sleeves, penetration frames, supports, hangers, anchors etc. as required for your work.

18.  One-year workmanship and equipment warranty at a minimum is required with extended warranties as required by the Contract Documents.

19.  Fire safe and seal all wall, ceiling and floor penetrations as required for your work including SCIF room walls.

Initials _____

Luke C. Moore SHS
Washington, DC
Page 3 of 3

20. Provide access doors and panels required by code for access to concealed conditions. Installation by others unless noted otherwise.

21. Provide all rigging, hoisting crainage etc., as required for setting equipment or materials of this contract.

22. Subcontractor will complete and sign Document 00600 "Representations and Certifications For Contracting" and Document 1413 "Statement and Acknowledgment" returning both Documents with this Contract (Attached).

23. All electronic systems are year 2000 compliant.

24. All personnel must provide proof of United States citizenship or be specifically authorized admittance to the work site by the Contracting Officer in accordance with Section 01140N Work Restrictions.

25. If required for Federal projects, the Subcontractor shall submit at least 15 days prior to the desired date of entry, an original alphabetical list of personnel who require entry into Government property to perform work on the project. Furnish for each person:
    a) Name
    b) Date and place of birth
    c) Citizenship
    d) Home address
    e) Social Security number
    f) Naturalization or Alien Registration number
    The request of personnel passes shall be accompanied with the following certification:
    "I hereby certify that all personnel on this list are either born U.S. citizens, naturalized U.S. citizens with naturalization shown, or legal aliens with the alien registration number indicated.
    Signature/Corporate Official

Initials

SECTION 00600 Representations & Certifications

Solicitation No: )

Name and Address of Proposer:

PowerMax Inc
8510 CEDAR STREET
SILVER SPRING MD
20910

Contractor DUNS Number 87-664-4642

Cage Code: _____

TIN: 52-1888540

CLAUSES INCORPORATED BY FULL TEXT

52.203-2    CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (APR 1985)

(a) The offeror certifies that --

(1)  The prices in this offer have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other offeror or competitor relating to --

(i)  Those prices,

(ii)  The intention to submit an offer, or

(iii)  The methods of factors used to calculate the prices offered:

(2) The prices in this offer have not been and will not be knowingly disclosed by the offeror, directly or indirectly, to any other offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the offeror to induce any other concern to submit or not to submit an offer for the purpose of restricting competition.

(b) Each signature on the offer is considered to be a certification by the signatory that the signatory --

(1) Is the person in the offeror's organization responsible for determining the prices offered in this bid or proposal, and that the signatory has not participated and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision; or

(2) (i) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) of this provison ____EDWARD  J. MURRAY_____ (insert full name of person(s) in the offeror's organization responsible for determining the prices offered in this bid or proposal, and the title of his or her position in the offeror's organization);

(ii) As an authorized agent, does certify that the principals named in subdivision (b)(2)(i) above have not participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) above; and

(iii) As an agent, has not personally participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision.

(c) If the offeror deletes or modifies subparagraph (a)(2) of this provision, the offeror must furnish with its offer a signed statement setting forth in detail the circumstances of the disclosure.

(End of provision)

52.203-11    CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (APR 1991)

(a) The definitions and prohibitions contained in the clause, at FAR 52.203-12, Limitation on Payments to Influence Certain Federal Transactions, included in this solicitation, are hereby incorporated by reference in paragraph (b) of this Certification.

(b) The offeror, by signing its offer, hereby certifies to the best of his or her knowledge and belief that on or after December 23, 1989,--

(1) No Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement;

(2) If any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress or an employee of a Member of Congress on his or her behalf in connection with this solicitation, the offeror shall complete and submit, with its offer, OMB standard form LLL, Disclosure of Lobbying Activities, to the Contracting Officer; and

(3) He or she will include the language of this certification in all subcontract awards at any tier and require that all recipients of subcontract awards in excess of $100,000 shall certify and disclose accordingly.

(c)  Submission of this certification and disclosure is a prerequisite for making or entering into this contract imposed by section 1352, Title 31, United States Code.  Any person who makes an expenditure prohibited under this provision, shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

(End of provision)

52.204-3    TAXPAYER IDENTIFICATION (OCT 1998)

(a) Definitions.

"Common parent," as used in this provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

"Taxpayer Identification Number (TIN)," as used in this provision, means the number required by the Internal Revenue Service (IRS) to be used by the offeror in reporting income tax and other returns. The TIN may be either a Social Security Number or an Employer Identification Number.

(b) All offerors must submit the information required in paragraphs (d) through (f) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the IRS. If the resulting contract is subject to the payment

reporting requirements described in Federal Acquisition Regulation (FAR) 4.904, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(d) Taxpayer Identification Number (TIN).

✗ TIN: 52-1888540

____ TIN has been applied for.

____ TIN is not required because:

____ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;

____ Offeror is an agency or instrumentality of a foreign government;

____ Offeror is an agency or instrumentality of the Federal Government.

(e) Type of organization.

____ Sole proprietorship;

____ Partnership;

✗ Corporate entity (not tax-exempt);

____ Corporate entity (tax-exempt);

____ Government entity (Federal, State, or local);

____ Foreign government;

____ International organization per 26 CFR 1.6049-4;

____ Other _____

(f) Common parent.

✗ Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

____ Name and TIN of common parent:

Name _____

TIN _____

(End of provision)

52.204-5    WOMEN-OWNED BUSINESS (OTHER THAN SMALL BUSINESS) (MAY 1999)

(a) Definition. Women-owned business concern, as used in this provision, means a concern that is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

(b) Representation. [Complete only if the offeror is a women-owned business concern and has not represented itself as a small business concern in paragraph (b)(1) of FAR 52.219-1, Small Business Program Representations, of this solicitation.] The offeror represents that it ( ) is a women-owned business concern.

(End of provision)

52.209-5    CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (DEC 2001)

(a)(1) The Offeror certifies, to the best of its knowledge and belief, that--

(i) The Offeror and/or any of its Principals--

(A) Are ( ) are not (X) presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(B) Have ( ) have not (X) within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(C) Are ( ) are not (X) presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in subdivision (a)(1)(i)(B) of this provision.

(ii) The Offeror has ( ) has not (X) within a three-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

(2) "Principals," for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions).

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER SECTION 1001, TITLE 18, UNITED STATES CODE.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withholding of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information of

an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

(End of provision)

52.219-1   SMALL BUSINESS PROGRAM REPRESENTATIONS (MAY 2001) ALTERNATE I (OCT 2000) & ALTERNATE II (OCT 2000)

(a)(1) The North American Industry Classification System (NAICS) code for this acquisition is 233220 General Contractors - Commercial and Institutional Building Construction.

(2) The small business size standard is $28,500,000.00.

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) Representations. (1) The offeror represents as part of its offer that it ( ) is, ( ) is not a small business concern.

(2) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents, for general statistical purposes, that it ( ) is, ( ) is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(3) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a women-owned small business concern.

(4) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a veteran-owned small business concern.

(5) (Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (b)(4) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a service-disabled veteran-owned small business concern.

(6) (Complete only if offeror represented itself as small business concern in paragraph (b)(1) of this provision). The offeror represents, as part of its offer, that--

(i) It ( ) is, ( ) is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR Part 126; and

(ii) It ( ) is, ( ) is not a joint venture that complies with the requirements of 13 CFR Part 126, and the representation in paragraph (b)(6)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. (The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture: _____.) Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(7) (Complete if offeror represented itself as disadvantaged in paragraph (b)(2) of this provision.) The offeror shall check the category in which its ownership falls:

( ) Black American.

( ) Hispanic American.

( ) Native American (American Indians, Eskimos, Aleuts, or Native Hawaiians).

( ) Asian-Pacific American (persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China, Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Hong Kong, Fiji, Tonga, Kiribati, Tuvalu, or Nauru).

( ) Subcontinent Asian (Asian-Indian) American (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands, or Nepal).

(c) Definitions. As used in this provision--

Service-disabled veteran-owned small business concern--

(1) Means a small business concern--

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

Small business concern means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and the size standard in paragraph (a) of this provision.

Veteran-owned small business concern means a small business concern--

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

Women-owned small business concern means a small business concern --

(1) That is at least 51 percent owned by one or more women; in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

(d) Notice.

(1) If this solicitation is for supplies and has been set aside, in whole or in part, for small business concerns, then the clause in this solicitation providing notice of the set-aside contains restrictions on the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small, HUBZone small, small disadvantaged, or women-owned small business concern in order to obtain a contract to be awarded under the preference programs established pursuant to section 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references section 8(d) for a definition of program eligibility, shall--

(i) Be punished by imposition of fine, imprisonment, or both;

(ii) Be subject to administrative remedies, including suspension and debarment; and

(iii) Be ineligible for participation in programs conducted under the authority of the Act.

(End of provision)

52.219-19    SMALL BUSINESS CONCERN REPRESENTATION FOR THE SMALL BUSINESS COMPETITIVENESS DEMONSTRATION PROGRAM (OCT 2000)

(a) Definition.

"Emerging small business" as used in this solicitation, means a small business concern whose size is no greater than 50 percent of the numerical size standard applicable to the North American Industry Classification System (NAICS) code assigned to a contracting opportunity.

(b) [Complete only if the Offeror has represented itself under the provision at 52.219-1 as a small business concern under the size standards of this solicitation.]    The Offeror [  ] is, [X] is not an emerging small business.

(c) (Complete only if the Offeror is a small business or an emerging small business, indicating its size range.)

Offeror's number of employees for the past 12 months (check this column if size standard stated in solicitation is expressed in terms of number of employees) or Offeror's average annual gross revenue for the last 3 fiscal years (check this column if size standard stated in solicitation is expressed in terms of annual receipts). (Check one of the following.)

No. of Employees    Avg. Annual Gross Revenues

[X]  50 or fewer    _____ $1 million or less

_____ 51 - 100    _____ $1,000,001 - $2 million

_____ 101 - 250    _____ $2,000,001 - $3.5 million

_____ 251 - 500    _____ $3,500,001 - $5 million

_____ 501 - 750    _____ $5,000,001 - $10 million

_____ 751 - 1,000    [X] $10,000,001 - $17 million

_____ Over 1,000    _____ Over $17 million

(End of provision)

52.219-22    SMALL DISADVANTAGED BUSINESS STATUS (OCT 1999)

(a) General. This provision is used to assess an offeror's small disadvantaged business status for the purpose of obtaining a benefit on this solicitation. Status as a small business and status as a small disadvantaged business for general statistical purposes is covered by the provision at FAR 52.219-1, Small Business Program Representation.

(b) Representations.

(1) General. The offeror represents, as part of its offer, that it is a small business under the size standard applicable to this acquisition; and either--

___ (i) It has received certification by the Small Business Administration as a small disadvantaged business concern consistent with 13 CFR 124, Subpart B; and

(A) No material change in disadvantaged ownership and control has occurred since its certification;

(B) Where the concern is owned by one or more disadvantaged individuals, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

(C) It is identified, on the date of this representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration(PRO0Net); or

___ (ii) It has submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

(2)___ For Joint Ventures. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements at 13 CFR 124.1002(f) and that the representation in paragraph (b)(1) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture. [The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: _____.]

(c) Penalties and Remedies. Anyone who misrepresents any aspects of the disadvantaged status of a concern for the purposes of securing a contract or subcontract shall:

(1) Be punished by imposition of a fine, imprisonment, or both;

(2) Be subject to administrative remedies, including suspension and debarment; and

(3) Be ineligible for participation in programs conducted under the authority of the Small Business Act.

(End of provision)

52.223-13    CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING (OCT 2000)

(a) Submission of this certification is a prerequisite for making or entering into this contract imposed by Executive Order 12969, August 8, 1995.

(b) By signing this offer, the offeror certifies that--

(1) As the owner or operator of facilities that will be used in the performance of this contract that are subject to the filing and reporting requirements described in section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11023) and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106), the offeror will file and continue to file for such facilities for the life of the contract the Toxic Chemical Release Inventory Form (Form R) as described in sections 313(a) and (g) of EPCRA and section 6607 of PPA; or

(2) None of its owned or operated facilities to be used in the performance of this contract is subject to the Form R filing and reporting requirements because each such facility is exempt for at least one of the following reasons: (Check each block that is applicable.)

[ ] (i) The facility does not manufacture, process or otherwise use any toxic chemicals listed under section 313(c) of EPCRA, 42 U.S.C. 11023(c);

[ ] (ii) The facility does not have 10 or more full-time employees as specified in section 313.(b)(1)(A) of EPCRA 42 U.S.C. 11023(b)(1)(A);

[ ] (iii) The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been filed with EPA);

[ ] (iv) The facility does not fall within Standard Industrial Classification Code (SIC) major groups 20 through 39 or their corresponding North American Industry Classification System (NAICS) sectors 31 through 33; or

[ ] (v) The facility is not located within any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Northern Mariana Islands, or any other territory or possession over which the United States has jurisdiction.

252.204-7004    REQUIRED CENTRAL CONTRACTOR REGISTRATION.(NOV 2001)

(a) Definitions.

As used in this clause--

(1) Central Contractor Registration (CCR) database means the primary DoD repository for contractor information required for the conduct of business with DoD.

(2) Data Universal Numbering System (DUNS) number means the 9-digit number assigned by Dun and Bradstreet Information Services to identify unique business entities.

(3) Data Universal Numbering System +4 (DUNS+4) number means the DUNS number assigned by Dun and Bradstreet plus a 4-digit suffix that may be assigned by a parent (controlling) business concern. This 4-digit suffix may be assigned at the discretion of the parent business concern for such purposes as identifying subunits or affiliates of the parent business concern.

(4) Registered in the CCR database means that all mandatory information, including the DUNS number or the DUNS+4 number, if applicable, and the corresponding Commercial and Government Entity (CAGE) code, is in the CCR database; the DUNS number and the CAGE code have been validated; and all edits have been successfully completed.

(b)(1) By submission of an offer, the offeror acknowledges the requirement that a prospective awardee must be registered in the CCR database prior to award, during performance, and through final payment of any contract resulting from this solicitation, except for awards to foreign vendors for work to be performed outside the United States.

(2) The offeror shall provide its DUNS or, if applicable, its DUNS+4 number with its offer, which will be used by the Contracting Officer to verify that the offeror is registered in the CCR database.

(3) Lack of registration in the CCR database will make an offeror ineligible for award.

(4) DoD has established a goal of registering an applicant in the CCR database within 48 hours after receipt of a complete and accurate application via the Internet. However, registration of an applicant submitting an application through a method other than the Internet may take up to 30 days. Therefore, offerors that are not registered should consider applying for registration immediately upon receipt of this solicitation.

(c) The Contractor is responsible for the accuracy and completeness of the data within the CCR, and for any liability resulting from the Government's reliance on inaccurate or incomplete data. To remain registered in the CCR

database after the initial registration, the Contractor is required to confirm on an annual basis that its information in the CCR database is accurate and complete.

(d) Offerors and contractors may obtain information on registration and annual confirmation requirements by calling 1-888-227-2423, or via the Internet at http://www.ccr.gov.

(End of clause)

252.209-7001   DISCLOSURE OF OWNERSHIP OR CONTROL BY THE GOVERNMENT OF A TERRORIST COUNTRY (MAR 1998)

(a) "Definitions."

As used in this provision --

(a) "Government of a terrorist country" includes the state and the government of a terrorist country, as well as any political subdivision, agency, or instrumentality thereof.

(2) "Terrorist country" means a country determined by the Secretary of State, under section 6(j)(1)(A) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)(i)(A)), to be a country the government of which has repeatedly provided support for such acts of international terrorism. As of the date of this provision, terrorist countries include: Cuba, Iran, Iraq, Libya, North Korea, Sudan, and Syria.

(3) "Significant interest" means --

(i) Ownership of or beneficial interest in 5 percent or more of the firm's or subsidiary's securities. Beneficial interest includes holding 5 percent or more of any class of the firm's securities in "nominee shares," "street names," or some other method of holding securities that does not disclose the beneficial owner;

(ii) Holding a management position in the firm, such as a director or officer;

(iii) Ability to control or influence the election, appointment, or tenure of directors or officers in the firm;

(iv) Ownership of 10 percent or more of the assets of a firm such as equipment, buildings, real estate, or other tangible assets of the firm; or

(v) Holding 50 percent or more of the indebtness of a firm.

(b) "Prohibition on award."

In accordance with 10 U.S.C. 2327, no contract may be awarded to a firm or a subsidiary of a firm if the government of a terrorist country has a significant interest in the firm or subsidiary or, in the case of a subsidiary, the firm that owns the subsidiary, unless a waiver is granted by the Secretary of Defense.

(c) "Disclosure."

If the government of a terrorist country has a significant interest in the Offeror or a subsidiary of the Offeror, the Offeror shall disclosure such interest in an attachment to its offer. If the Offeror is a subsidiary, it shall also disclose any significant interest the government of a terrorist country has in any firm that owns or controls the subsidiary. The disclosure shall include --

(1) Identification of each government holding a significant interest; and
(2) A description of the significant interest held by each government.
                    (End of provision)

252.227-7028    TECHNICAL DATA OR COMPUTER SOFTWARE PREVIOUSLY DELIVERED TO THE GOVERNMENT (JUN 1995)

The Offeror shall attach to its offer an identification of all documents or other media incorporating technical data or computer software it intends to deliver under this contract with other than unlimited rights that are identical or substantially similar to documents or other media that the Offeror has produced for, delivered to, or is obligated to deliver to the Government under any contract or subcontract. The attachment shall identify—

(a) The contract number under which the data or software were produced;

(b) The contract number under which, and the name and address of the organization to whom, the data or software were most recently delivered or will be delivered; and

(c) Any limitations on the Government's rights to use or disclose the data or software, including, when applicable, identification of the earliest date the limitations expire.

(End of clause)

252.247-7022    REPRESENTATION OF EXTENT OF TRANSPORTATION BY SEA (AUG 1992)

(a) The Offeror shall indicate by checking the appropriate blank in paragraph (b) of this provision whether transportation of supplies by sea is anticipated under the resultant contract. The term supplies is defined in the Transportation of Supplies by Sea clause of this solicitation.

(b) Representation. The Offeror represents that it:

_____ (1) Does anticipate that supplies will be transported by sea in the performance of any contract or subcontract resulting from this solicitation.

__X__ (2) Does not anticipate that supplies will be transported by sea in the performance of any contract or subcontract resulting from this solicitation.

(c) Any contract resulting from this solicitation will include the Transportation of Supplies by Sea clause. If the Offeror represents that it will not use ocean transportation, the resulting contract will also include the Defense FAR Supplement clause at 252.247-7024, Notification of Transportation of Supplies by Sea.

(End of provision)

## PART 1 - STATEMENT OF PRIME CONTRACTOR

| 1. PRIME CONTRACT NO. | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER |
|---|---|---|
| W912DR-04-C-0010 | | |

| 4. PRIME CONTRACTOR (Name, address and ZIP code) | 5. SUBCONTRACTOR (Name, address and ZIP code) |
|---|---|
| Coakley & Williams Construction, Inc.<br>16 South Summit Avenue, Suite 300<br>Gaithersburg, MD 20877 | PowerMax Inc<br>8510 Cedar Street<br>Silver Spring MD 20910 |

6. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on date shown in Item 2 by

(Name of Awarding Firm) _____ Coakley & Williams Construction, Inc. _____ to the subcontractor identified in Item

5, for the following work:

Mechanical — Plumbing/HVAC

| 7. PROJECT | 8. LOCATION |
|---|---|
| Luke C. Moore SHS | Washington, DC |

| 9. NAME AND TITLE OF PERSON SIGNING | 10. BY (Signature) | 11. DATE SIGNED |
|---|---|---|
| William E. Simons<br>Senior Vice President | Edward J. Murray | 7/7/04 |

## PART II - ACKNOWLEDGMENT OF SUBCONTRACTOR

12. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

Contract Work Hours and Safety      Davis-Bacon
     Standard Act            Apprentices and Trainees
     Compensation          Compliances with Copeland Regulations
Payrolls and Basic Records          Subcontracts
     Withholding of Funds       Contract Termination-Debarment

13. NAME(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

ServiceMax — Small Business Minority Owned (100%) HubZone
     Contracted to Do Insulation and Temperature Controls
SheetMetal — Metro Mechanical
Air/Water Balance —— Yet to Let

| 14. NAME AND TITLE OF PERSON SIGNING | 15. BY (Signature) | 16. DATE SIGNED |
|---|---|---|
| Edward J Murray | EJMurray | 7/7/04 |

NSN 7540-01-151-297     U.S. GOVERNMENT PRINTING OFFICE : 1994 O - 435 - 468
1413-101

STANDARD FORM 1413 (10-83)
Prescribed by GSA
PAR (48 CFR) 53.222(a)

# Power Max Inc.     MECHANICAL CONTRACTOR

8510 CEDAR STREET  SILVER SPRING, MARYLAND 20910  (301)585-9300  FAX (301)585-4348  BID (301)585-4349

July 7, 2004

Coakley Williams                          RE: Luke C. Moore Project
16 South Summit Ave
Suite 300                                 Subject: Subcontract Agreement
Gaithersburg MD 20877

Attn: Jack Simons

Dear Mr. Sir,

As per your letter dated 6/11/04, please find attached both executed copies of the
Subcontract Document. Note additional Rider A. Rider A is identified on page 6 of 6 of
Contract. Please initial off in space indicated. Rider A addresses revisions to the
conditions of the Subcontract. As requested, Performance and Payment Bonds are
attached. An insurance certificate has been forwarded under separate cover.

Please execute and return one (1) copy of the attached Contract Document for our files.

Very Truly Yours,

Edward Murray
Business Manager

NOTE 7/27/04
our COPY of CONTRACT
that We RETURNED 7/7/04
IN W/ C. R.